TOWN OF ORMOND, PLAINTIFF IN ERROR, V. H. B. SHAW
AND SUSIE E. SHAW HIS WIFE, J. D. PRICE, L. L. PIN-
KERTON, AND ELLEN D. PINKERTON, MARY A. CORRE, AND
WILLIAM A. CORRE, JOHN HOLDEN, BELLE PRICE SIM-
RALL, AND JOSEPHINE SIMRALL AS EXECUTRIX OF THE LAST
WILL OF C. B. SIMRALL, DECEASED, EMILY M. CURRIER
AND B. W. CURRIER, HER HUSBAND, HANNAH OAKLEY,
WIDOW AND SOLE HEIR OF F. M. OAKLEY, DECEASED, E.
W. AMSDEN AND EDNA B. AMSDEN, ELIZA M. WHITE AND
S. V. WHITE, ELLA FOULK, SPINSTER, DEVISEE OF WIL-
LIAM D. FOULK, WASHINGTON WATSON, C. G. BOSTROM,
ANNA M. WATSON, AND WILLIAM WATSON, GEORGIANNA
TREMAIN AND R. C. TREMAIN, NELLIE M. FOWLER, SPIN-
STER, AND GEORGE N. WOOD, DEFENDANTS IN ERROR.

1. In a proceeding taken under Chapter 5197, Acts of 1903, to
exclude lands from the corporate limits of a municipal or-
ganization the husbands of married women who are among
the owners of the land so sought to be excluded may not
be necessary parties, but they are not improper parties;
and the widow and executrix of a deceased testator may
in the absence of a contrary showing be considered as
owners of the land for the purposes of such proceeding.

2. In a proceeding under Chapter 5197, Acts of 1903, to exclude
lands from a municipal organization, where the petition
gives the names of the owners of the land sought to be
excluded as shown by the last tax roll of the town and
the subdivisions of the land owned by each of them, and
alleges that of the owners so given all are plaintiffs ex-
cept two, it sufficiently alleges the owners of the land
sought to be excluded.

3. A proceeding under Chapter 5197 Acts of 1903, to exclude
lands from a municipal organization does not affect the
title to the land, nor does it impose any burden upon it,
and when the petition alleges that at least three-fourths

of the owners of the lands sought to be excluded are plaintiffs as required by the statute it is sufficient even though all the owners are not parties.

4. Chapter 5197 Acts of 1903, being "An Act to amend Chapter 4601, Laws of Florida, being entitled an act to amend Section 720 of the Revised Statutes of the State of Florida, in reference to contracting of territorial limits of cities and towns," is not in conflict with the provision of Section 16 of Article 3 of the Constitution that "each law enacted in the Legislature shall embrace but one subject and matter properly connected therewith, which subject shall be briefly expressed in the title," nor with the provision of Section 8 of Article 8 of the Constitution that "The Legislature shall have power to establish and to abolish municipalities, to provide for their government, to prescribe their jurisdiction and powers, and to alter or amend the same at any time," nor with Article 2 of the Constitution which ordains that "The powers of the government of the State of Florida shall be divided into three departments—legislative, executive and judicial; and no person properly belonging to one of the departments shall exercise any powers appertaining to either of the others, except in cases expressly provided for by this Constitution."

5. In a proceeding under Chapter 5197, Acts of of 1903, to exclude lands from a municipal organization, a duly certified copy of a portion of the tax roll of the town which copy purports on its face to contain all that relates to the names of owners and description of lands in controversy that appears in the tax roll, is properly admitted in evidence to show that the lands were upon the tax roll of the town assessed to the persons named as owners thereof.

6. There being evidence to sustain the findings of the trial court they will not be disturbed on appeal.

This case was decided by Division A.

Writ of Error to the Circuit Court for Volusia County.

STATEMENT.

On October 23rd, 1903, a petition was filed in the Circuit Court for Volusia county under the provisions of Chapter 5197 acts of 1903, in which it is alleged that Hiram B. Shaw and more than twelve other named persons "constitute three-fourths of the owners of land in fractional sections 10 and 11, T. 14 S., R. 32 E, on the east side of the Halifax river in Volusia county, Florida, which said fractional sections are subdivided and mapped as 'Bellewood,' 'Assessors Triton Beach' and 'Triton Beach,' maps of which are on record in the clerk's office of Volusia county at DeLand;" "that said sections 10 and 11 on the east side of the Halifax river constitute a connected body of land one mile north and south by about one half mile east and west constituting the northeast corner district within the corporate limits of the town of Ormond, a municipal corporation;" "that the town of Ormond is an incorporated town containing less than 150 qualified electors which, owing to the extent of its territory has embraced within its limits said sections 10 and 11 on the east side of the Halifax river forming the northeast corner of the incorporated territory * * * and said territory is by reason of its situation and distance from the village of Ormond virtually and commensurately excluded from the benefits of the municipal organization, while the said lands are subjected to municipal taxation, and these allegations are illustrated by the map of the town of Ormond which is attached to and made a part of this petition." The territorial limits of the town are set forth and petitioners object to being included within the corporate limits of said town because their lands are subjected to municipal taxation without commensurate benefit because they are on the opposite side of the river

and a long distance north of the village proper. There are no town improvements of any kind in the territory, nor is any of the money exacted from petitioners in the way of municipal taxation devoted to municipal purposes within this territory, nor is petitioners' property in any sense "town property," the owners of the land in said sections 10 and 11 as shown by the last tax roll of the town of Ormond are given, and it is alleged that of the owners so given all are plaintiffs except two. Petitioners applied to the Circuit Court "for an order excluding fractional sections ten (10) and eleven (11) Township fourteen (14) South Range thirty-two (32) East, on the east side of the Halifax river, from the corporate limits of the town of Ormond."

A demurrer was filed raising questions as to proper parties, ownership of the lands sought to be excluded, the construction of Chapter 5197 and its validity under Articles 2 and 8 and section 16 of Article 3 of the constitution. This demurrer was overruled and an answer was filed in which it is stated that the "respondent admits that it is a municipal corporation organized under the general incorporation laws of the State of Florida, and that its municipal boundaries are as set forth in the petition. Respondent is not sufficiently advised to make answer as to whether the petitioners are the owners respectively of the several lots or parcels of land alleged in the petition, or as to whether petitioners constitute three-fourths of the owners of land in fractional sections 10 and 11, T. 14, S., R. 32 E., on the east side of the Halifax river, as alleged in the petition. Respondent therefore denies each of said allegations, and commensurate benefit therefrom. Respondent says that territory embraced in said sections 10 and 11 on the east side of the Halifax river is virtually and commensurately

excluded from the benefits of the municipal organization, and denies that the lands of the petitioners are without commensurate benefit therefrom. Respondent says that the exhibits attached to said petition show that said sections 10 and 11 on the east side of the Halifax river have been fully platted and subdivided into lots; and respondent says that said lands have not been divided into blocks with intersecting streets for the reason that the owners thereof have not been willing to dedicate lands for street purposes, and to condemn the same according to law would involve great expense and be a grievance to petitioners; and respondent says that petitioners by reason of their unwillingness to dedicate lands for street purposes are estopped to complain that streets have not been opened up through their lands and money spent thereon. Respondent admits that the revenues of the town are not expended upon the private roads in said lands, and says that this respondent has no legal right to so spend the revenues of the town. That respondent is and ever has been willing to open up and assume control of public streets through said lands, and maintain the same in proper repair by the expenditure of a proper proportion of the revenues of the town thereon, but has been defeated in said purpose by the refusal of the owners thereof to dedicate lands for such streets and highways, and the unwillingness of such owners to dedicate to the town such private roads as now obtain through said lands, so that the public revenues can lawfully be expended in the maintenance and repair thereof. Respondent further says that said lands became a part of the municipality more than ten years ago; that many of the present owners of said lands and their grantors and ancestors have continuously participated in the municipal

29 S. C.

organization, have voted at the municipal elections and held and exercised offices in the municipal government and especially that of membership in the town council, during all of which time the said lands have been in the same condition as at present; and respondent says that petitioners are estopped from questioning the benefits derived by them from the municipal organization, and that the relief sought by said petition should be denied."

On the 22nd day of June, 1904, the court made the following order: "This day this cause came on to be heard upon the petition, answer and evidence submitted by the respective parties and was argued by counsel, and thereupon, upon consideration thereof, the objection of the petitioners to having fractional sections ten and eleven, township fourteen south, range thirty-two east on the east side of the Halifax river included in the limits of the town of Ormond is sustained, and said described territory is hereby excluded from the corporate limits of said town.

Done and ordered in open court at DeLand, Florida, this 22nd day of June, A. D. 1904.

MINOR S. JONES, Judge."

A writ of error was taken from this order and the following errors are assigned here:

"1. The court erred in overruling respondent's demurrer to the petition in said cause.

"2. The court erred in admitting in evidence the certified copy of a portion of the tax roll of the town of Ormond pertaining to the premises in question.

3. The court erred in denying respondent's motion for a new trial.

4. The Court erred in entering judgment against respondent and in favor of petitioners.

5. The court erred in entering judgment excluding the territory and lands mentioned in the petition from the corporate limits of the town of Ormond."

*Isaac A. Stewart* and *Egford Bly,* for Plaintiff in Error.

*Geo. M. Robbins,* for Defendants in Error.

WHITFIELD, J., (*after stating the facts*). The first ground of the demurrer to the petition is that it fails to show any interest that requires the joinder therein of several of the petitioners. Among the petitioners are the names of men who join with their wives and also the names of a widow and an executrix, while the petition shows the wives in one case, and the deceased husband and testator in the other to be the owners of the property sought to be excluded from the municipality. It is urged that where the wives own the property sought to be excluded from the municipality the husbands should not be made parties, and also that in the case of the deceased husband and testator the widow and executrix do not appear to be the owners of the land. Even if the husbands are not necessary parties they are not improper parties, and the widow and executrix of a deceased testator may in the absence of a contrary showing be considered the owner of land for the purpose of getting it excluded from a municipality in a proceeding of this character.

The second and third grounds of the demurrer are that the petition does not show the lands respectively owned by the several plaintiffs and that it does not show who are the owners of the lands which it is sought to exclude. The petition gives the names of "the owners of the land in said sections 10 and 11 as shown by the last tax roll of the

town of Ormond" and the subdivisions owned by each of them, and alleges that of the owners so given all are plaintiffs except two. This is a sufficient allegation of the owners of the land sought to be excluded.

It is also contended that the petition is defective in that it shows that all of the lands sought to be excluded from the municipality are not owned by the petitioners and that consequently the rights of absent owners are involved. The act provides "That when any incorporated town (or city) containing less than one hundred and fifty qualified electors shall, owing to extent of territory, have embraced within its limits, any lands which may from distance or other cause be virtually or commensurately excluded from the benefits of such municipal organization it shall be lawful for any owner or owners of such lands or three-fourths of them desiring to have the same excluded from such corporate limits and jurisdiction, to apply by petition to the Circuit Court in and for the county in which said incorporated town is situated, setting forth in said petition the limits of such incorporated town as then existing and the grounds of his or their objection to being included within the limits of such corporation, whereupon the said Circuit Court shall order notice of said application to be served upon the Mayor of said town or city and appoint a day for the hearing of such application. If upon the hearing of said application the said court shall sustain the said objection, the said tract or tracts of land shall be so excluded. Such petition may be heard and determined by said court in term time or vacation, and any question of fact may be determined by said court without a jury." The proceeding under this act does not affect the title to the land, nor does it impose any burden upon it, and it is not necessary to do more than comply with the requirements of

the act and for at least three-fourths of the owners of the territory to move for its extension. The act is not subject to the criticism that it applies only where lands are owned jointly. It is a general act and is intended to apply to all cases which land included within a municipality may from distance or other cause be virtually or commensurately excluded from the benefits of such municipal organization.

The contention that the act under which this proceeding is had conflicts with section 16 of Article 3 of the constitution in that the provisions of the act are inconsistent with an entirely foreign to subject expressed in its title is not well founded. The title is "An Act to Amend Chapter 4601, Laws of Florida, being Entitled An Act to Amend Section 720 of the Revised Statutes of the State of Florida, in Reference to Contracting of Territorial Limits of Cities and Towns." The subject of section 720 of the Revised Statutes and Chapter 4601 laws of Florida, as well as of the act here considered, Chapter 5197, is the contracting of territorial limits of cities and towns, and all the provisions of each one of said acts have reference to such subject and are matters properly connected therewith. The lands sought to be excluded from the municipality in this proceeding do not effect the contiguity of the remainder of the lands in the corporate limits of the town.

It is insisted that the provisions of Chapter 5197 acts of 1903, conflict with Article 2 of the constitution which provides that "The powers of the government of the State of Florida shall be divided into three departments—legislative, executive and judicial; and no person property belonging to one of the departments shall exercise any powers appertaining to either of the others, except in cases expressly provided for by this constitution.

It was held by this court in the case of City of Jack-sonville v. L'Engle, 20 Fla. 344, that the power conferred upon county commissioners by Chapter 3025, acts of 1877, which was similar to that conferred upon the Circuit Courts under the act here considered, was not strictly judicial within the prohibition of the constitution. If not strictly judicial so as to prohibit its exercise by persons belonging to the executive department, yet such power involves the exercise of *quasi* judicial judgment and discretion and it may be conferred upon the Circuit Court under the provision of section 11 of Article 3 of the constitution which in defining the jurisdiction of Circuit Courts gives to them original jurisdiction of certain specified matters "and of such other matters as the legislature may provide." The constitution by section 8 of Article 8, provides that "The legislature shall have power to establish and abolish municipalities, to provide for their government, to prescribe their jurisdiction and powers, and to alter or amend the same at any time." Under this provision it is competent for the legislature by law to exclude from a municipality a portion of the lands within its limits. The constitution also provides by Section 24 of Article 3 that "The legislature shall establish a uniform system of county and municipal government, which shall be applicable, except in cases where local or special laws are provided by the legislature that may be inconsistent therewith." Under this provision the legislature may by general law provide for excluding lands from the limits of incorporated municipalities and the power may be conferred upon the Circuit Courts to determine the matters involved in the proceedings for such exclusion.          ,

The second assignment of error is that "the court erred in admitting in evidence the certified copy of a portion of

the tax roll of the town of Ormond pertaining to the premises in question." The copy of the portion of the tax roll offered in evidence and objected to is certified by the tax collector of the town of Ormond "to be a true and exact copy of the tax roll of the town of Ormond for the year 1903, covering the districts known as Bellewood, Assessors Triton Beach and Triton Beach, as far as the names of owners and description of property assessed." This copy of a portion of the tax roll purports on its face to contain all that relates to the names of owners and descriptions of land in controversy that appears in the tax roll, and it was properly admitted in evidence to show that the lands were upon the tax roll of the town assesed to the persons named as owners thereof. Such copy was admissible to show the names of persons to whom the lands in controversy were assessed by the town, which was proper evidence in this proceeding.

Under the third assignment of error it is contended that there was no sufficient showing as to the ownership of the lands sought to be excluded, and that the evidence failed to show a case of virtual or commensurate exclusion from the benefits of the municipal organization. In a proceeding of this character the title to the lands is not involved, and under the facts of the case the ownership of the land is sufficiently shown by the tax roll made by the town, at least in the absence of any evidence to the contrary. After a consideration of the evidence we can not say it fails to show that the lands in controversy are virtually or commensurately excluded from the benefits of the municipal organization and the finding of the Circuit Court will not be disturbed.

Plaintiff in error in conclusion argues that the petitioners are in such laches in bringing this proceeding

that relief should be denied them. Chapter 5197 which authorizes three-fourths of the owners of the land to take this proceeding was enacted in 1903, and amends Chapter 4601 which did not contain such provision, and as the petition in this case was filed on October 23rd, 1903, laches can not be imputed to the petitioners.

The judgment is affirmed.

SHACKLEFORD, C. J., and COCKRELL, J., concur.

TAYLOR, P. J., and HOCKER and PARKHILL, JJ., concur in the opinion.