TOWN OF BOYNTON, a Municipal Corporation, *Plaintiff in Error*, vs. STATE OF FLORIDA, ex rel. FRED H. DAVIS, Attorney General, Relator, and LEILA B. PIERSON, et al., Co-relators, *Defendants in Error.*

138 So. 639.

Division A.

Opinion filed January 6, 1932.

*Giles J. Patterson*, Attorney for the Plaintiff in Error;

*Gedney, Johnston & Lilienthal*, Attorneys for the Defendants in Error.

BROWN, J.—This cause is before us on writ of error to review the action of the Circuit Court of Palm Beach County in granting a judgment of ouster in quo warranto proceedings instituted in the name of the State by its

Attorney General, joined by certain property owners as corelators, which judgment ousted the Town of Boynton from exercising the jurisdiction and powers of a municipality over the lands of the corelators.

Information upon the writ of quo warranto was granted discloses the following facts. By Chapter 10350 of the special acts of the legislature of 1925, an attempt was made to enlarge the corporate boundaries of the Town of Boynton, which at the time said act was adopted comprised about 4 square miles of territory, so as to include approximately 12 square miles of territory as described in said act, and which description is set forth in the information. The effect of this boundary extension act was to extend the corporate limits for a distance of approximately 4½ miles north and south and 3 miles east and west. The population of said town, of a permanent character, in 1925, was 1178, 776 whites and 402 negroes. The built up or developed section covered only a comparatively small area centering around the intersection of the Dixie Highway and Ocean Avenue as shown on the map attached to the information. The business portion of the town consists of three or four filling stations, a Post Office, Town Hall and a few other small buildings strung out along the Dixie Highway and on Ocean Avenue west of the Dixie Highway, which are the two main Highways of said town. Ocean Avenue runs from the west eastward through the town to the ocean front, crossing the Florida Coast Line Canal. The town repairs and keeps in condition that portion of Ocean Avenue lying west of the bridge over the canal and the County repairs and keeps in condition that portion of Ocean Avenue lying between the bridge and the Ocean Boulevard. From the center of said town to the intersection of Ocean Avenue and the Dixie Highway to the south line of the land of corelators, which lands are located in the extreme northeast corner of the tract of lands embraced in the boundaries extension

act, is by road a distance of approximately 2 miles. The south end of Lake Worth extends southward into the territory covered by the boundaries extension act for a distance of something over a mile, as shown by the map, in the northeastern portion of such territory, and from such southern terminus of the Lake the East Coast Canal continues southward. The lands of corelators is a narrow ridge or dune lying between the Atlantic Ocean on the east, and the waters of Lake Worth on the west, 3275 feet or approximately 3/5 of a mile in length, north and south, and varying in width from 250 to 500 feet, east and west, through which the County road known as the Ocean Boulevard runs north and south, being located on the crest of the ridge, about 20 feet above sea level. Corelators' said strip of land is bounded on the south by South Lake Worth Inlet, which is spanned by a bridge over which the Ocean Boulevard passes. Said property is entirely wild, unimproved, unoccupied rural land, covered by a growth of cocoanut palms and tropical shrubbery, and for the most part slopes sharply to the east and west from the top of the ridge and said road. The only avenue of ingress and egress to and from the land of corelators and the said Town is over the Ocean Boulevard south to Ocean Avenue, thence westward. The information alleges that in order to reach the land of corelators from the Town, it is necessary to cross the bridge over Lake Worth Inlet, and that within the past three years, before the filing of the information, on one occasion the bridge had been closed and the relators entirely cut off from said town, on one occasion the bridge being closed for approximately two months. Such developments and improvements as had been made by the Town had all been west of the Dixie Highway and south of Ocean Avenue, in that portion of the town lying east of the Coast Line Canal. That no improvements have been made, and none are contemplated, north of Ocean Avenue and east of the Canal, in

the direction of the land of the co-relators and that such lands are entirely without any municipal benefits of any kind or nature, either present or prospective. The Town of Boynton furnishes no police protection to the lands of co-relators, and there is indeed no necessity for it, such lands being wild and inaccessible. The town maintains a police department consisting of one officer but said officer does not patrol the property of co-relators. The sewerage system of said town extends over an area of only two blocks in the center of said town and is disposed of by means of septic tanks and does not in any manner benefit said lands nor can the benefits of such system be extended to said lands. The town maintains approximately 45 street lights, none of which are anywhere near the lands of co-relators. The town does not collect garbage or refuse and does not maintain any streets or roads east of the Coast Line Canal and north of Ocean Avenue. The land lying north of Ocean Avenue and east of the canal is for the most part undeveloped and unoccupied. The said town has not constructed, planned to construct or contemplated constructing any sewers, water system, facilities for lights or heat, or any municipal utilities of any nature which are or may be of any benefit to the land of the co-relators, and none were contemplated or intended when said lands were attempted to be brought within the corporate limits of said town; that said lands are located at such a distance from the center of the built-up portion of said town and of such character that it is impracticable for said town to furnish such lands with police or fire protection or any other municipal protection, convenience or benefit of any kind or nature and that no such benefits were contemplated, either when the act was adopted or at the time the information was filed. The town has assessed and imposed taxes on said land amounting to $2,944. for 1928, and had increased this to $3,475. for 1929, although there had been a decrease in the

taxes and assessed valuations of property in the town as a whole for the year 1929 as compared with 1928, The information charges that said special act of 1925, in so far as it attempts to include the described lands of the co-relators within the corporate limits of said town, contravenes those provisions of the declaration of rights contained in the constitution of Florida prohibiting the taking of private property without just compensation and guaranteeing the equal protection of the laws and the right to acquire, possess and protect private property, and is in that respect oppressive, unnecessary, arbitrary and unjust and constitutes a flagrant abuse of legislative power.

On this information, the writ of quo warranto was issued by the Circuit Judge, and served upon the defendant.

There was no demurrer to the information, but the Town of Boynton filed an answer, which did not deny the essential facts alleged in the information nor set up any facts justifying the attempted inclusion of the lands of co-relators within the limits of said town. A demurrer to this answer was sustained, with leave to amend and an amended answer was filed. The amended answer alleged that the defendant was exercising its corporate powers over the territory described in the writ by virtue of said Chapter 10350 of the Special laws of 1925, and denied that said act was ineffective to embody the lands of co-relators within the territorial limits of said town. The answer further alleged that the indebtedness of the town prior to the act of 1925 was $185,000, and it had since been increased to $975,000, without any objection being made on the part of the co-relators. The answer further alleged the construction of certain municipal improvements, including a casino on the ocean front and a water main to the Ocean Boulevard and along said Boulevard to within 500 feet of the land described in the writ, and that the town is able and willing to extend said service to the limits of said property described in the writ if re-

quested but that no requests had been made. The answer admits that the Ocean Boulevard was built and maintained by the County of Palm Beach. The nearest the answer comes to showing the extension of any municipal benefits to the property of co-relators, is the allegation that the defendant had spent $10,000.00 for fire equipment and had extinguished several grass fires on the property described in the writ.

The relators demurred to the answer upon the following grounds: That it did not deny the facts alleged in the information; that it did not justify the attempted inclusion of the lands of co-relators within the limits of said town; that it did not set up any facts justifying the usurpation alleged in the information, and that it did not answer the information by showing specifically what said town had done or planned to do with respect to furnishing municipal benefits to the lands of co-relators.

A motion for final judgment of ouster was filed, and the cause coming on to be heard upon the demurrer to the answer and motion for judgment of ouster, the Court sustained the demurrer to the answer and granted the motion for final judgment of ouster, as to the lands of co-relators described in the writ. To this order and judgment this writ of error was sued out.

On the facts alleged in the information and the writ of quo warranto, and admitted by the amended answer, as well as on the meagre facts alleged in the answer, it appears that the strip of land owned by the co-relators was not geographically separated from the remainder of the municipal territory, situated as it was in the extreme northeast corner, and bounded on the west by the waters of Lake Worth, on the east by the Atlantic Ocean and on the south by the waters of Lake Worth Inlet, but it was also entirely beyond the range of any existing or contemplated municipal benefits. True it is that the answer does allege that the town had put out some grass

fires on this property, but when this was done is not shown, nor at whose request. As the property was wild, unimproved and unoccupied, we do not see how these grass fires could have caused any appreciable damage to this land. Certainly this is too vague and shadowy an allegation of benefits to justify taking these wild lands into the town. We would not be justified in holding the Circuit Court in error by reason of this allegation in the answer. Nor do we consider that there was any sufficient showing of estoppel in the answer to put the Circuit Court in error.

Indeed, the only question which has been stressed in the able arguments in this case is whether or not the court below was authorized to oust the town from exercising municipal powers over only that portion of the territory added, or attempted to be added, to the town by the act of 1925, which belonged to the co-relators, without holding the entire act unconstitutional and void. The information only alleged that the act was unconstitutional in so far as it attempted to include the said lands of co-relators. The sufficiency of neither the information, nor the writ, was questioned by demurrer or motion to quash, or otherwise. So this question does not appear to have been raised in the lower court. That court naturally confined its judgment of ouster to the strip of land described in the information, which was the only land alleged to have been taken into the town in contravention of constitutional guarantees. As it was physically separated from the town by water, and in the extreme northeast corner of the town's territory as described in the boundary extension act, the town could be ousted from jurisdiction thereover without causing any hiatus or disconnection of remaining territory, and without appreciably affecting the regularity or symmetry of the municipal area as a whole. Under the facts of this case, if this particular strip of land had been attempted to be added to the other

territory of the town by a special act, we think such an act would unquestionably have been unconstitutional as a whole, under the principles laid down in the case of State ex.rel. Davis v. City of Stuart, 97 Fla. 69, 120 So. 335, in which case the entire act was held void. And inasmuch as this strip of land, situated as it was and separated by water from the remainder of the territory described in the act, was the only land involved in this proceeding, and the question of the validity or invalidity of the act as a whole not having been raised in the trial court, it is somewhat doubtful whether such question can properly be raised here. The court below only ousted the municipality from exercising power and jurisdiction over this particular land brought before it by the information and writ. Whether the trial court thought the act as a whole was unconstitutional or not, does not appear. But the court confined its judgment to the land as to which judgment of ouster was sought.

However, we cannot see that the trial court would have been in error, under all the facts and circumstances of this case, even if its judgment be construed as holding, in effect, that the act of 1925 was unconstitutional, or constitutionally inapplicable, only in so far as it attempted to embrace the land here in controversy within the municipal boundaries. The courts are not boundary-fixing bodies, but they do have the power, and are imposed with the duty of enforcing the constitutional rights of the parties as pertains to the property brought before them, and if, in order to do this, it becomes necessary to strike down, in whole or in part, the boundary lines established by legislative enactment in volation of those rights, it must be done, leaving it to the legislature to draw a new and different line which will not violate such rights, if it so wills. To hold otherwise, would make it possible to run rough-shod over the constitutional rights of property owners by merely embracing in an extensive boundary

extension act a small area which could legitimately be added to the town or city, although the remaining and larger portion of the territory thus added was entirely beyond the range of any municipal benefits whatever. This does not mean that the courts would go so far in quo warranto proceedings as to exclude small vacant lots or parcels of land scattered about within the interior of a town or city which, while not receiving any direct present benefits, were potentially within the range of municipal benefits which would accrue when such lots were built on or improved, such as streets, or sewerage, lights, police and fire protection, etc. Nor does this mean that the courts would chop out small indentations of rural or agricultural lands which here and there run across the municipal boundary lines. The rights of individual property owners must be considered with reference to all the facts as to the entire area. As was said in the Stuart case:

> "It is admitted that within the boundaries of a municipality, no matter how fairly drawn, it is practically impossible to avoid some inequality of burdens, but in such cases all the inhabitants and their property are at least within the range of, and receive, municipal benefits of some sort, and such is the very sensible and practical presumption upon which the courts refuse to interfere. And it must be admitted also, that there may exist in such cases some unavoidable degree of territorial inequality—some indentations of agricultural or rural lands here and there across and inside the municipal boundary lines, which lines of necessity must be drawn so as to provide some degree of symmetry and regularity in the shape and contour of the city and allow some latitude for its reasonably anticipated growth."

But in the same case it was also said:

> "It may be true that only the legislature can 'draw the line', but if the line as drawn be unconstitutional, the courts can set it aside, leaving it to the legislature to draw another and valid line if it so wills. The

difficulty of judicial adjudication of such a class of cases, and the many and various factors which enter into the determination of the constitutionality of such legislation—such for instance as the difficulty of judicially reviewing the exercise of the undoubted power of the legislature in establishing municipal boundaries to accommodate not only the present but reasonably anticipated future needs of a growing municipality— must not deter the courts from enforcing the constitution in those cases, rare though they may be, where it is, clearly and beyond all reasonable doubt, violated and disregarded.''

The rule is well settled that although a legislative act is in part unconstitutional, the remainder, if a workable statute within the legislative intent so far as it goes will be allowed to stand, unless it appears that the legislature could not reasonably have intended to adopt the statute at all if the portion stricken down had not been included. See Harper v. Galloway, 58 Fla. 255, 51 So. 226. If a duly enacted statute contains provisions that are invalid, because in conflict with the organic law, and such invalid portions may be severed, and the remainder of the statute may then be made effective for the purpose designed, and will not cause results not intended by the legislature, and it does not appear that the statute would not have been enacted without the invalid portions of the act, the invalid portions should be disregarded and the valid portions enforced if it can be done to effectuate the legislative intent. Hillsborough County v. Savage, 63 Fla. 337, 59 So. 835. If there be any sphere within which a statute may operate without violating organic law, it should within that sphere be made effective. Sutton Phosphate Co. v. Priest, 67 Fla. 370, 65 So. 282. A statute may be invalid when applied to one state of facts, though under another state of facts its application may not violate rights secured by organic law. S. A. L. Ry. Co. v. Robinson, 68 Fla. 407, 67 So. 139. A statute may be valid on its face and in its general and proper application, and

yet be held void in application to particular cases, as where it operates to deprive a party of a right secured to him by the constitution. Poindexter v. Greenhow, 114 U. S. 270, 29 Law. Ed. 185. We think the basic principle underlying these decisions might be extended to apply to a case of the kind now before us. It is the duty of the courts to uphold and enforce the legislative intent in so far as may be practicably possible to do so without violating the constitution. If the act cannot be constitutionally enforced as to a portion of the subject matter dealt with in the act, but may be constitutionally upheld and enforced as to the remainder, without violating the manifest intent as to such remainder of the subject matter, we see no good reason why this should not be done. The legislature has itself adopted a statute providing for the exclusion of lands from small municipalities which are "virtually or commensurately excluded" from the benefits of the municipal organization, at the suit of even a single property owner, which exclusion leaves the remainder intact. See section 3049 C. G. L.

So if the judgment of the Court below is in effect a holding that, in so far as chapter 10350, the boundary extension act, attempts to embrace the described lands of the co-relators, it is as to such lands not constitutionally applicable and enforceable, we cannot say that, under the pleadings and facts in this particular case, the trial court was in error in granting the judgment of ouster as to said lands.

Affirmed.

BUFORD, C.J., AND ELLIS, J., concur.

WHITFIELD, P.J., concurs in the opinion and judgment.

TERRELL, J., not participating.

DAVIS, J., disqualified.