CITY OF CORAL GABLES, a municipal corporation, v. STATE, *ex rel.* CARY D. LANDIS, Attorney General; MARY IRENE DORN, joined by her husband, ROBERT W. DORN, and GEORGE E. COLLINS, as Administrator of the Estate of Jennie Scarborough, deceased.

177 So. 290.

Division A.

Opinion Filed November 5, 1937.

Rehearing Denied December 15, 1937.

*Morton B. Adams,* for Plaintiff in Error;

*Paul C. Taylor,* for Defendants in Error.

CHAPMAN, J.—The parties here will be referred to in this decision as they appeared in the court below as relators and respondent. On October 29, 1935, relators filed their information for a writ of quo warranto in the Cir-

cuit Court for Dade County, Florida, and the information contained the correct description of the lands now situated within the corporate limits of the City of Coral Gables. The city contained an area of approximately 14½ square miles, with 6,000 population, and the land consists of about 11 acres, used as an orange grove, and located about four miles south of the business center of Coral Gables. Chapter 10418, Acts of 1925, describes the city and boundaries of the City of Coral Gables. The information recites that the City of Coral Gables has not since incorporation furnished the lands electric service, street lighting, water service, garbage collection service, fire protection, police protection, street cleaning or repairing, or any other municipal benefits, and the land is not potentially useful for municipal purposes. The adjacent property to the affected lands is sparsely settled, rural in character and receives no municipal benefits from said city; that the described property is being taxed for municipal purposes and no municipal benefits accrue to the relators.

A writ of quo warranto duly issued and was served upon the defendant City of Coral Gables, Florida, and on November 9, 1935, the respondent filed its motion to quash the writ served upon it, and upon hearing, said motion to quash was overruled and denied. On March 2, 1936, respondent filed a return thereto in which it is alleged that co-relator Mary Irene Dorn consented to the inclusion of her land and has continuously acquiesced therein; that the Charter Act of 1925 has been amended by the Legislature by and with the knowledge, consent and acquiescence of co-relators. The answer refers to possible municipal benefits to the described lands and alleges that if the City of Coral Gables continues to grow, the lands ultimately will receive municipal benefits.

On August 3, 1936, a stipulation and an agreed statement of facts were entered into, signed by counsel and filed in the cause and the parties relied upon the stipulation of facts and no evidence was taken. The trial of the action by jury was waived by counsel and the issues submitted to the Court upon the stipulation of facts. The lower court, on August 3, 1936, made and entered a final judgment of ouster affecting the lands described in the information and the City of Coral Gables was prohibited from exercising, enjoying, and performing any of the functions, powers, privileges and franchises of a municipality in, upon, over and concerning the lands described in the information. A motion for a new trial was made and overruled, a bill of exceptions signed and settled, a writ of error sued out and the action is here for review on several assignments of error, but a consideration of the final judgment of ouster by this Court will settle the merits of the action.

The City of Coral Gables was created by Special Act of the Legislature of Florida, being Chapter 10418, enacted in 1925. The record shows that the lands embraced in the original Act included 14½ square miles and the lands of the co-relators. Chapter 12633, Special Acts of 1937, and Chapter 13970 were amended during the 1929 Session of the Legislature, and the 1931, 1933 and 1935 sessions of the Legislature passed acts affecting the original charter, but the lands described in the petition of the co-relators were not affected by any subsequent Act to the 1925 Act.

The stipulation of facts by counsel of record was the issue to be settled by a jury unless this right was waived. It will be observed by the record that the parties waived the right of trial by jury and submitted the action upon the stipulation of facts and the law applicable thereto to a Judge of the Circuit Court of Dade County. The Consti-

tution of 1885 required the Legislature to establish a uniform system of county and municipal government, which shall be applicable, except in cases where local or special laws are provided. Likewise, the Legislature was given the power to establish and abolish municipalities, to provide for their government, to prescribe their jurisdiction and powers and to alter or amend the same at any time. The Legislature was functioning constitutionally in the enactment of Chapters, *supra*.

This Court, in the case of State, *ex rel.* Davis, v. City of Stuart, 97 Fla. 69, 120 Sou. Rep. 335, considered a similar question to the one here involved. Mr. Justice Brown, speaking for the Court, text page 116, said:

If the Legislature can, by a mere extension of boundary, authorize the city to tax farm lands for purely city purposes, it might, without extension, direct all farms, within given lines, outside of the city, to pay these city taxes. Thus, when we get rid of that confusion of thought which confounds extension of boundary and power of taxation, we perceive that taxes laid on mere farm lands to pay city levies applicable only to the built-up or true city, is nothing more than an order to farmers for the benefit of the city residents; it is taking the money of A to pay for improvements made for the use of B. This is palpably and flagrantly unjust, and therefore against common right. If the Legislature itself cannot compel farmers to pay city taxes for purely local purposes in which they have no share, it is clear it cannot authorize the city to do indirectly what it cannot do directly. An order, with or without the extension of boundary, upon a certain class to pay taxes for local benefits conferred on others, is wholly different from a power to pay a general tax for the support of government. The latter is a power to which every citizen of a State sub-

mits himself in consideration of the general benefits derived from government. * * *"

This Court considered a similar question in the case of State, *ex rel.* Attorney General, v. City of Avon Park, 108 Fla. 641, text p. 662, 149 Sou. Rep. 409, where it said:

"The quoted provisions of the State Constitution do not and cannot authorize the taxation of property for municipal purposes when such taxation would in effect deprive any person of property without due process of law, or would take property without just compensation, or would deny the equal protection of the laws, in violation of the Fourteenth Amendment to the Federal Constitution and of Sections 1 and 12, Declaration of Rights of the State Constitution. And such organic provisions may be violation where large areas of rural land are included in a municipality, when such lands are not needed or useful for any actual or potential municipal purpose whatever except to be taxed without any present or prospective compensating benefits to the lands or to their owners, and the rights of such owners have not been waived.

"Where relatively large or grossly excessive areas of wild, unoccupied lands are included within or added to a municipality, and the lands are not needed or useful for any municipal purpose except for taxation, and such lands or their owners cannot receive any actual or potential benefit from the incorporation of the lands in the municipality, the owners of such lands, in the absence of waiver or estoppel, are entitled to 'have remedy by due course of law' for the injury done by unjust taxation of such lands; and the courts are required to administer right and justice by appropriate procedure under the law. Section 4, Declaration of Rights, Constitution of Florida."

See: State, *ex rel.* Davis, Attorney General, v. City of Clearwater, 106 Fla. 761, 139 Sou. Rep. 377.

Mr. Chief Justice ELLIS, in State, *ex rel.* Davis, v. Town of Lake Placid, 109 Fla. 419, text pages 426, 428 and 429, 147 South. Rep. 468, said:

"Population is essential to the creation of a municipal corporation. The corporate body is composed of inhabitants within the territorial limits of the municipality. While density of poulation, in the absence of constitutional limitations, is a matter within legislative discretion, it cannot be maintained that the power to establish a municipality may be lawfully exercised where there is no population of a given area or even where the population is absurdly disproportionate in numbers to the area defined by boundaries. There are inherent limitations upon the Legislature in this regard imposed by the use of the phrase 'to establish, and to abolish, municipalities,' in the Eighth Section of Article VIII of the Constitution. There must exist a village, a community of people, a settlement or a town occupying an area small enough that those living therein may be said to have such social contacts as to create a community of public interest and duly requiring, in consideration of the general welfare, an organized agency for the management of their local affairs of a *quasi* nature. * * *

"A large territory, many hundreds of times greater than the vicinity occupied by the inhabitants of a village, including only rural or farm lands, cattle ranges, fruit groves, and forests where the scattered population derives no advantage, benefit, aid or privileges from the local government of the town proper was never in the history of the subject deemed either necessary, convenient or expedient to local government. Nor does power to establish municipalities embrace the power to designate such areas as

boundaries of a municipality in anticipation of the coming of great numbers of people as visitors or permanent residents to enjoy .the pleasures proposed to be afforded by development enterprises on the part of private land owners of such areas for profit. Nor may the Legislature, under the power inherent in such body, authorize any city or borough or incorporate district to obtain or appropriate money or lend its credit to any corporation, association, institution or individual. Sec. 10, Art. IX, Constitution."

The court below was acquainted with the lands described in the information, its location within the incorporate limits of the City of Coral Gables, the lack of municipal benefits, the purpose for which the land was used and upon stipulation of counsel as to the facts entered its judgment of ouster. We have examined the entire record and fail to observe reversible error and the judgment appealed from accordingly is affirmed.

ELLIS, C. J., and WHITFIELD, TERRELL and BUFORD, J. J., concur.

BROWN, J., dissents.

BROWN, J. (dissenting).—We held in a former case coming up from Coral Gables that where relators had acquiesced in the act of the Legislature establishing the boundaries for six or eight years, they were estopped to question it. I think that decision is applicable here. See State v. Coral Gables, 120 Fla. 492, 163 So. 308.