CITY OF SOUTH MIAMI v. STATE *ex rel.* CARY D. LANDIS, Attorney General, HELEN S. PEARSON, a Widow, *et al.*

192 So. 624
Division B
Opinion Filed November 24, 1939
Rehearing Denied January 5, 1940

*Stapp, Gourley, Ward & Ward,* for Plaintiff in Error; *Joseph Weintraub,* for Defendant in Error.

CHAPMAN, J.—This case is before the Court on writ of error to a judgment of ouster in an action in quo warranto instituted in the Circuit Court of Dade County, Florida. The information for writ of quo warranto was filed in the Circuit Court of Dade County, Florida, on the 3rd day of January, 1938, and was presented by a number of co-relators owning lands situated within the incorporate limits of the City of South Miami, Florida. The land affected and owned by each of the said relators is accurately described in the information.

The City of South Miami was established by Chapter 13425, Special Acts of Florida, Laws of 1927, and embraced the lands of the co-relators as described in this suit. Chap-

ter 16688, Special Acts of Florida, Laws of 1933, amended
Chapter 13425, *supra,* so as to reduce the territory embraced
in the City of South Miami from six to four square miles,
but the land of the co-relators involved in this suit was not
excluded from the City of South Miami.

The information recited that the City of South Miami
consisted of a small number ·of store buildings grouped in
the center of the territory, and that the lands of the relators
are isolated from the municipality proper, being two or
three miles from the city hall and classified strictly as rural
lands and that the City of·South Miami assessed the prop-
erty for taxation greatly in excess of their value for the
purpose of obtaining money to support the city government
and paying off its bonded indebtedness; the City of South
Miami had made no improvements upon the property, such
as streets, sidewalks, sewers, water mains, and no such
improvements are contemplated; that no benefits have ac-
crued to the lands and receiving no municipal benefits these
lands are constantly taxed for city purposes without prob-
ability of receiving benefits; that no streets or roads lead
to the lands except country roads and these are not kept
or maintained by the city; that no streets or lights are main-
tained in or near the property of the co-relators; no garbage
or refuse is collected by the city; while the garbage benefits
are enjoyed by the residents residing within the business
center of the municipality; that the lands are so remotely
located that they can not receive municipal benefits and
requiring said property to remain within the limits of the
municipality and to pay taxes thereon without receiving
municipal benefits in law deprives the owners of their prop-
erty without due process of law.

The lower court overruled a motion to quash and the
respondent city filed an answer denying many of the ma-

terial allegations appearing in the information, one of which was that the reduced area of the City of South Miami as amended consists of approximately three square miles and not four square miles as alleged in the information.

Counsel for the respective parties by stipulation waived the right of trial by jury and the issues were submitted to the Honorable Paul D. Barns, Judge of the Circuit Court. On July 19, 1938, a judgment of ouster was entered in behalf of the relators against the respondent city, and a motion for a new trial was made by the City and on hearing was on the 26th day of September, 1938, denied by the trial court. From the judgment of ouster writ of error has been perfected to this Court and several errors presented and argued for a reversal.

The Legislature of Florida, under Section 8 of Article VIII of the Constitution of Florida, has the power to abolish or establish municipalities. It was the custom on the part of Florida municipalities during the boom period to amend their charters and thereby expand the territorial areas. Large tracts of wild lands, bodies of water and farms were frequently included within municipalities. After the orgy of speculation of the boom period many municipalities amended their charters and contracted their territorial areas but many failed so to do.

Where property was taxed by a municipality and "municipal benefits" did not accrue, it was generally conceded that right and justice did not prevail. This Court, desiring to correct this injury or injustice to a property owner, held that a court of equity will on proper application hear the complaint and if the facts warrant it, will permanently enjoin the assessment and collection of taxes or will entertain a quo warranto proceeding by the aggrieved taxpayer upon the relation of the State of Florida by the Attorney General.

It is now settled law in Florida that private individuals, with the consent of the Attorney General, can file an information in the nature of a quo warranto to test the existence of a public franchise or to challenge the exercise of a municipal franchise. The law requires such a proceeding to run in the name of the State on the relation of the Attorney General. See Robinson v. Jones, 14 Fla. 256; State *ex rel.* Johnson v. City of Sarasota, 92 Fla. 563, 109 So. 473; State *ex rel.* Landis v. Town of Lake Placid, 117 Fla. 874, 158 So. 497.

In the case of City of Coral Gables v. State *ex rel.* Landis, 129 Fla. 834, 177 So. 290, suit in quo warranto was filed to oust eleven acres of land used as an orange grove and located about four miles south of the business center of the City of Coral Gables. The municipality had a population of 6,000 and an area within the incorporate limits of approximately 14½ square miles. The basis of the suit to oust the eleven acres of orange grove land from the City of Coral Gables was that since the date of the incorporation in 1925, the lands sought to be ousted had not been furnished electric service, street lighting, water service, garbage collection service, fire protection, street cleaning or repairing, or any other municipal benefits and the land was not potentially useful for municipal purposes; that the land adjacent to the orange grove was sparsely settled, rural in character and received no municipal benefits. There was a judgment of ouster and on appeal here was affirmed.

It is well established that quo warranto is a remedy to hear and determine such alleged injustices. See State *ex rel.* Davis v. City of Stuart, 97 Fla. 69, 120 So. 335; State *ex rel.* Attorney General v. City of Avon Park, 108 Fla. 641, 149 So. 409; State *ex rel.* Davis v. City of Clearwater, 106 Fla. 761, 139 So. 337; State *ex rel.* Davis v. Town of Lake Placid, 109 Fla. 419, 147 So. 468.

While this Court has held that a proceeding in quo warranto was a remedy open to a land-owner seeking relief where a municipality undertakes to exercise control of territory over which it has no jurisdiction, it has likewise held that where unbenefitted rural lands were included in a municipality and the owner had no adequate legal remedy and is not estopped, equity may enjoin the collection of municipal taxes. See State ex rel. Attorney General, v. City of Avon Park, 108 Fla. 641, 149 So. 409; City of Sarasota v. Skillin, 130 Fla. 724, 178 So. 837.

It is next contended that the co-relators having acquiesced in the right of the City of South Miami to tax the property described in the information that they are now estopped as a matter of law after a period of ten years to maintain the suit at bar. While in some of the earlier decisions this Court intimated that estoppel in some instances may become a bar to such an action, an analysis of these cases seem to support the conclusion that estoppel at law will be determined by the facts of each case. While the City of South Miami has a population of about 2,000 and has an area of between three and four square miles, it appears reasonable to assume that the co-relators as shown by the facts of this case would be justified in waiting a reasonable length of time for the improvement and development of the City of South Miami by people buying property and erecting homes and business houses thereon and in this manner relieving the heavy tax burden. After some time elapsed it was apparent that the property within the city would not be improved at an early date and within a reasonable time thereafter the suit at bar was filed. We do not believe that under the facts and circumstances of the case at bar the co-relators have conducted themselves so as to be estopped from maintaining the present suit. This Court, in considering estop-

pel by laches in the case of State *ex rel.* Landis v. Town of Boynton Beach, 129 Fla. 528, 177 So. 327, said:

"The material facts involved in this litigation are not in dispute. They are admitted by the answer to the information. The defendant in error relies entirely on estoppel by conduct which we hold is not shown as to either the Town of Boynton or the Town of Boynton Beach. Even if there had been a basis for the creation of the latter, the lands involved should be eliminated on authority of Town of Boynton v. State *ex rel.* Davis, 103 Fla. 1113, 138 So. 639.

"There is some confusion as to the circumstances under which estoppel by *laches* may be invoked to block the path of relators in cases of this kind. It is settled that each case must stand or fall on its own facts. In the following cases this question has been treated and in some of them we held that delay was fatal in stated periods while in others we refused to do so. Town of Ormond v. Shaw, 50 Fla. 445, 39 So. 108; State *ex rel.* Davis v. City of Stuart, 97 Fla. 69, 120 So. 335; State *ex rel.* Landis v. City of Auburndale, 121 Fla. 336, 163 So. 698; State *ex rel.* Attorney General v. City of Fort Lauderdale, 102 Fla. 1019, 136 So. 889; Town of Boynton v. State *ex rel.* Davis v. City of Clearwater, 106 Fla. 761, 139 So. 377; on rehearing, 108 Fla. 635, 146 So. 836; State *ex rel.* Attorney General v. City of Avon Park, 108 Fla. 641, 149 So. 409; State *ex rel.* Davis v. City of Largo, 110 Fla. 21, 149 So. 420; State *ex rel.* Davis v. City of Pompano, 113 Fla. 246, 151 So. 485; City of Winter Park v. State *ex rel.* Attorney General, 119 Fla. 343, 161 So. 386."

It is next contended that the evidence offered in the lower court on the part of the co-relators is insufficient in law to sustain the judgment appealed from. We have read the evidence appearing in the record offered by the respective

parties and we find ample evidence to sustain the judgment of the lower court. The responsibility of making error to appear is on the party resorting to this Court and there exists as a matter of law a presumption as to the correctness of the ruling of the lower court.

We have studied the transcript and briefs, and the authorities cited therein by counsel have been considered, and after hearing oral argument at the bar of this Court, we are of the opinion that reversible error has not been made to appear and for this reason the judgment appealed from is hereby affirmed.

WHITFIELD, P. J., and BROWN, J., concur.

TERRELL, C. J., concurs in opinion and judgment.

Justices BUFORD and THOMAS not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.