ERVIN, Judge,
Concurring and Dissenting.
I would affirm the order of the deputy commissioner in its entirety. It is true that Kuhle v. Kirk, 177 So.2d 329, 330 (Fla.1965), construed Section 440.20(5)[1] “to apply only to delinquent payments of compensation for temporary disability and death benefits.” It is also true that the benefits ultimately awarded here were permanent, not temporary, and that the date of maximum medical improvement, as ultimately determined, coincided precisely with the date on which the employer/carrier (e/c) had accepted claimant as 25% permanently, partially disabled (PPD).[2] Nevertheless, I consider that the e/c should be estopped, because of its actions, to deny that the benefits which it had voluntarily agreed to pay claimant were anything other than temporary. A brief summary of the facts is required.
Claimant was injured in an industrial accident on January 2, 1975, and was later released from his treating physician’s care with a permanent physical impairment rating of 20% of the body as a whole. On May 9, 1978, the e/c filed a WCC-4 form accepting the claimant as having a 25% PPD of the body as a whole. Later, a claim was filed seeking to have claimant determined permanently, totally disabled (PTD). At the hearing, the e/c did not contest claimant’s entitlement to the 25% rating which it had accepted, but only took issue with the claimant’s contention that he was PTD. *393 Following an order by the judge of industrial claims finding that the extent of claimant’s disability was as claimant had asserted, the e/c took an appeal, and during its pendency, on November 27, 1978, terminated the benefits which it had previously agreed to pay. The net effect of the e/c’s decision to terminate was that claimant did not receive any disability benefits between November 27, 1978 and March 14, 1980, or until after the Supreme Court had affirmed the orders of both the judge of industrial claims and the Industrial Relations Commission.
In my view it is precisely this type of arbitrary action by e/cs which Section 440.-20(5) was designed to remedy. Had the e/c complied with its voluntary agreement to pay claimant benefits based upon its decision that he was 25% PPD, it would have been obligated to pay weekly disability amounts for a total period of 87.5 weeks of compensation from the date of the agreement. Instead of doing so, however, it unilaterally abrogated its stipulation approximately 29 weeks folio wing ■ its acceptance. By its own actions, the e/c obviously considered itself not bound by the “permanent” label it placed upon the agreement, and I would consider it now estopped from arguing that the agreement was anything other than one obligating it to pay temporary benefits.
The equitable principle of estoppel has been incorporated into the workers’ compensation law in many contexts.[3] I see no reason why estoppel should not be applied within the penalty context. Estoppel is a multifaceted concept; it pertains to situations involving much more than affirmative representations made by the party sought to be estopped.[4] An estoppel can also arise by virtue of positive acts or conduct,[5] or even due to silence, acquiescence,[6] or delay[7]. And, more to the point, it can arise from one party’s inconsistent legal positions, if such conduct is detrimentally relied upon by the other party. See Fla.Jur.2d, Estoppel and Waiver, § 49.
In the case at bar the claimant should have been aware that there would be a justified delay in receiving benefits authorized by the deputy’s award in excess of the voluntary payments which he had been receiving during the e/c’s appeal of the award. See Section 440.27(2), authorizing the stay of an order awarding disability or medical benefits during the pendency of an appeal. However, he had no reason to expect that he would be without any benefits during the appeal, especially since there was no dispute[8] that he was partially disabled. Indeed, the e/c defended on the basis that claimant was no more than 25% PPD, the amount of disability which it had voluntarily consented to pay. It is precisely this kind of inconsistency in legal positions which cries out for the imposition of an equitable estoppel.
*394 Finally, I consider that the disallowance of penalties in situations where the e/c first accepts, then rejects, a voluntary determination of disability is contrary to the spirit of the Workers’ Compensation Law since an e/c could use the threat of terminating voluntary payments as a subtle means of economic coercion, thereby forcing a claimant to settle below the true value of his claim. An e/c should not be permitted to present the claimant with such a Hobson’s choice. Although there is no evidence in the record concerning what motivated the e/c to cease paying benefits, the e/c no doubt was cognizant, as stated by the deputy commissioner, “what the effect of terminating all compensation to a claimant, pending an appeal, would have on his ability to provide for his and his family’s needs.” The imposition of a penalty as a means of compensating claimant for the inconvenience caused to him and his family by the nearly 16-month delay in reinstating payments is a sanction which, in my judgment, was contemplated by the legislature.
To conclude: Kuhle has no application to the circumstances before us because the e/c’s conduct estops it from asserting its voluntary agreement was one other than to pay temporary benefits. I would therefore treat the suspended voluntary payments as temporary benefits,[9] the late payment of which is subject to a penalty within the ambit of Kuhle.

. Section 440.20(5), Florida Statutes, provides: If any installment compensation payable without an award is not paid within 14 days after it becomes due, ... there shall be added to such unpaid installment an amount equal to 10% thereof, which shall be paid at the same time as, but in addition to, such installment of compensation, unless notice is filed under subsection (4), or unless such non-payment results from conditions over which the employer or carrier had no control....
A virtually identical provision is now contained in Section 440.20(7), Florida Statutes (Supp. 1980).

. It appears from a review of the cases relating to the question of penalties that an e/c may avoid the assessment of penalties if its accepted date of MMI corresponds with that ultimately determined in an adjudicated award. See Kuhle, supra, at 331, and Kuhle’s progeny, Massey v. Haynie, 180 So.2d 331 (Fla.1965); Walt Disney World Co. v. Kahle, IRC Order 2-2455 (March 7, 1974); Winn Dixie Stores v. Reese, IRC Order 2-3380 (March 24, 1978) and Judicial Administrative Commission v. Marks, 394 So.2d 211 (Fla. 1st DCA, 1981). Nevertheless, none of those cases has considered the question whether an e/c may be subjected to penalties — despite its prior voluntary acceptance of an MMI date which is later retrospectively confirmed by an order of adjudication — if it terminates the disability benefits it had agreed to pay.

. For instance, carriers under certain circumstances have been estopped to deny employment status. See, e. g., Miami Dolphins, Ltd. v. Tucker, IRC Order 2-2615 (1974); Blumberg v. American Fire and Casualty Co., 51 So.2d 182 (Fla.1951); Dyalwood, Inc. v. Thomas, 122 So.2d 314 (Fla.1960). Another line of cases has established that a carrier can be estopped to assert the statute of limitations as a defense. See, e. g., Howanitz v. Biscayne Electric, Inc., 139 So.2d 678 (Fla.1962); Engle v. Deerborne School, 226 So.2d 681 (Fla.1969); Pate v. Bay County School Board, IRC Order 2-3076 (December 9, 1976).

. The difference between promissory estoppel and equitable estoppel is that, as to the former, the representation is promissory rather than pertaining to an existing fact. South Inv. Corp. v. Norton, 57 So.2d 1 (Fla.1952); Southeastern Sales and Service Co. v. T. T. Watson, Inc., 172 So.2d 239 (Fla. 2d DCA 1965).

. See, e. g., State ex rel. Watson v. Gray, 48 So.2d 84 (Fla.1950).

. See, e. g., Hillsborough County v. Memorial Heights Development Co., 114 Fla. 251, 154 So. 188 (1934).

. See, e. g., South Miami v. State, 140 Fla. 740, 192 So. 624 (1939).

. In a situation where the penalty provisions are applicable, a carrier must normally controvert the right to compensation within 21 days “after it has knowledge of the alleged injury or death.” Fla.Stat. § 440.20(6). See also Florida Erection Services, Inc. v. McDonald, 395 So.2d 203, no. VV-150 (Fla. 1st DCA, 1981).

. In a sense the carrier may be said to have treated its voluntary payments in a manner akin to the seldom awarded temporary partial compensation provided in Section 440.15(4), Florida Statutes. As to these benefits, Professor Alpert states that “[temporary partial disability may follow or be proceeded by temporary total disability or by any other kind of disability.” L. Alpert, Workmen’s Compensation Law, § 11-2 (3d ed. 1978). Alpert also notes that there is no definition in Chapter 440 for “permanent” disability. § 11-18. He cites Dennis v. Brown, 93 So.2d 584 (Fla.1957), for the proposition that a claimant can be awarded temporary total benefits in connection with an industrial accident even though he was permanently totally disabled in connection with a previous accident. The Dennis court justified its conclusion as follows:
Workmen’s compensation acts are but statutory creations. Few statutes have achieved perfection in accomplishing their purpose. The statutes themselves may not evince a perfect logic. For instance, many provide that for a permanent and total disability a man shall be compensated at a percentage of his salary for a certain maximum number of weeks, instead of a period based upon some formula with respect to his remaining life expectancy. Due to the impossibility or impracticality of providing for every conceivable factual situation, application of the statute to achieve a known purpose of legislation may sometimes create a technical inconsistency. We feel that workmen’s compensation acts were designed to remove from the workman himself the burden of his own injury and disability and place it on the industry which he served. Such acts should be liberally construed with the interest of the working man foremost. 93 So.2d at 588.