GUYTE P. McCORD, Jr., Circuit Judge.
On April 18, 1958, in the course of his employment by respondent, Biscayne Electric, Inc., petitioner suffered a flash burn to both of his eyes. The accident occurred during a welding operation while petitioner was assisting a welder. An improperly adjusted welding torch came in contact with metal, causing a sparking flash from which the injury to petitioner resulted. He did not lose compensable time from work, but received medical treatment at the respondent insurance carrier’s expense from Dr. Harry Horwich until April 28, 1958, when he was discharged by the doctor. Petitioner thereafter continued in the employ of respondent employer until the completion of the job, and then went to work for other employers.
Subsequently, petitioner’s eye condition became worse, but he received no medical treatment therefor until he returned to Dr. Horwich on December 28, 1959. His condition at that time was diagnosed as: “A rupture of a cataract of the right eye with secondary glaucoma,” and he was immediately hospitalized and surgery was performed. On February 2, 1960, he underwent a second operation. From the medical testimony adduced before the deputy commissioner, it appears that petitioner has totally lost the use of his right eye. Claim was filed on October 10, 1960 and respondents defended on the grounds (1) that it was filed beyond the two-year statute of limitation, and (2) that the present eye condition of petitioner was not causally related to the flash burn suffered by him in April 1958.
The deputy commissioner held that the statute of limitation had not run due to an authorization by respondent by letter of March 25, 1960, to the doctor for medical treatment, which authorization was never revoked. Such letter states as follows:
“INSURANCE COMPANY OF NORTH AMERICA COMPANIES
$ * * $ *
March 25, 1960
“Harry Horwich, M. D.
401 Coral Way
Coral Gables, Florida
RE: Our File: 9-23-CR-10539
Biscayne Electric Inc.
Eugene Howanitz
D/A: 4/18/58
“Dear Dr. Horwich:
“We acknowledge receipt of your Surgeon’s Report in regards to the above captioned claim.
“Would you be kind enough to advise us the status of same.
“If you have finished treating this man would you, therefore, complete the enclosed Final Medical Report forms so we may bring this claim to a close.
“Very truly yours,
/s/ Hugh M. Noa
HUGPI M. NOA, Supervisor.”
*680 The deputy commissioner also found from the medical testimony that the condition of petitioner’s eye was causally related to the April 19S8 accident, and awarded compensation for temporary total disability from December 28, 1959, until August 31, 1960, and compensation thereafter for 175 weeks for the loss of an eye, all at the rate of $35 per week. The deputy commissioner further ordered payment of all medical expenses and costs of the claim, and awarded an attorneys’ fee to claimant’s attorneys.
Upon review, a majority of the- full Commission reversed the deputy commissioner on both of the aforementioned points, with one commissioner dissenting.
It is our opinion that the deputy commissioner’s order should have been upheld by the full Commission. Section 440.19(1) (a) provides as follows:
“The right to compensation for disability under this chapter shall be barred unless a claim therefor is filed within two years after the time of injury, except that if payment of compensation has been made or remedial treatment has been furnished by the employer without an award on account of such injury a claim may be filed within tino years after the date of the last payment of compensation or after the date of the last remedial treatment furnished by the employer.” (Emphasis supplied.)
Respondent was given notice by Dr. Horwich of his further treatment of petitioner, and respondent’s above-quoted letter was written within the two-year statute of limitation period. The tenor of the letter is such that it reasonably could be taken and was taken by petitioner’s doctor as an authorization for medical treatment. Had such not been the case, it is possible that the doctor would have advised petitioner to immediately file a claim to protect his rights.
An insurance carrier cannot avail itself of a letter of this type which could have the effect of leading a claimant to believe liability is accepted, only to later learn that the carrier is denying liability and time has expired for the filing of his claim. It is our view that under these circumstances the employer/insurance carrier is estopped to invoke the statute of limitation. This is particularly true when we consider that the Supreme Court has the duty to give liberal construction to the Workmen’s Compensation Act in favor of claimants.
We turn now to respondents’ second ground for denial — that the present eye condition of petitioner (the loss of his eye) was not causally related to the flash burn previously suffered by him. In support of the deputy commissioner’s finding that there was causal connection, petitioner testified that at the time of the welding accident from which he received the flash burn there were flying particles resulting from such accident; that he continually had trouble with his eyes thereafter. He testified as follows :
“Q (By Mr. Cosgrove) What happened from the — the sensation standpoint?
“A Well, after he discharged me I continued to use some stuff he gave me. At first I was using it every two hours, and I couldn’t do too much work, and I used it for a week after he discharged me, not every two hours, but every once in a while. From then on my eyes were never the same. I never wore glasses before, and it was in a month and a half that I had to go have some glasses. Since then I have been wearing glasses, and I found it hard to see until before Christmas. It was about a month. I guess it was a month. Maybe five weeks. It burned and burned and got so bad that it was the Christmas holidays that I could not go on, and I did not dream it like that, so my wife took me back there, and all he did was take one look and said, ‘The hospital for you.’ ”
There is no evidence to refute these statements. Also, they are consistent with the *681 additional history petitioner gave to Dr. Horwich when he went back to him on December 28, 1959.
As to causal relationship, Dr. Horwich testified as follows:
“Q Now, sir, was this condition, this cataract in the right eye that you found, was that causally related to the original injury of April 28, 1958, in your opinion, and is that opinion based on reasonable medical certainty?
“A Well, I’d like to make one thing very clear. When we talk about reasonable medical certainty, we have got to use common sense here more than reference books. In 13 years as being a physician, I have never seen a case exactly the same as this one, so I can’t say, Well, I see this every day, and this is what happens.’ You look at what you have, go over your history, and try to make sense out of it, and from that point of view you have to think backwards.
“Here is a man who has a cataract which is not the usual type of cataract by any description. It is certainly not the cataract of old age which is the common type of cataract. There is no sign of any cataract in the other eye. It is not the cataract you get with certain diseases like diabetes and thyroid disease. It in no way resembles that. You have to presume that this is a cataract from an unusual cause. Now, trauma is by far the commonest. We have a history of trauma about a year and a half or so previously, and it makes you wonder what kind of trauma would cause such a cataract. The recorded accident at that time is flash burn involving corneos. This will not of itself cause a unilateral cateract; however, I have frequently known a patient to come in with identical complaints and apparently the identical findings, and they don’t simply have a flash burn. They have a foreign body embedded in the eye which had come about at the time of the flash. At the time that bright light is given off, sparks of metal are given off and embedded in the eye. And the way I can reconstruct this is that a very minute piece of metal must have gotten into his right eye and formed this cataract. Obviously he is not the type of person to let you know everything that happens since he says the eye, after I did see him, had been red for months, and he did not come until then, so you can see that when he came in, his vision was reduced to hand movements.
“Q So in answer to my question, your answer is yes or no as to causal relationship ?
“THE COMMISSIONER: The question is, Was the diagnosis based on reasonable medical certainty?’
“Q (By Mr. Cosgrove) Actual cause or connection.
“A This seems reasonable to me.
“Q That it is related?
“A Yes.”
The only medical testimony other than that of Dr. Horwich is the testimony of Dr. Joseph Groom, who examined petitioner after surgery had been performed. He testified that petitioner had completely lost an eye and that it was probably traumatic or occupational.
Evidence is sufficient if it will support an inference of causal relation. From the evidence presented in this case, it is difficult to reach a conclusion other than that the cataract resulted from the same accident which caused the flash burn. Such conclusion by Dr. Horwich is not based merely upon conjecture or speculation, but is competent, substantial evidence which accords with logic and reason. It tends to show with reasonable probability that the loss of the eye was the result of the accident of April 18, 1958.
*682 ■The writ of certiorari is granted. The order of the Industrial Commission is quashed and the deputy commissioner’s findings and order entered on May 18, 1961, are reinstated.
It is so ordered.
ROBERTS, C. J., and DREW, THORNAL and O’CONNELL, JJ., concur.