McCAIN, Justice.
In this workmen’s compensation case, we are called upon to consider whether claim *25 ant Catalano’s claim for compensation filed with the Commission on October 10, 1969, is barred by Fla.Stat. § 440.19 which provides that claim for compensation must be filed within two years after the date of last remedial treatment furnished by the employer. The Industrial Relations Commission reversed the ruling of the Judge of Industrial Claims and held Catalano’s claim barred by the statute, with one member dissenting. This reversal was in error and that portion of the initial compensation order holding that the claim was timely filed should have been sustained.
On February 16, 1966, Catalano suffered an admittedly compensable injury to his right knee. From date of the injury through March 10, 1967, his employer voluntarily provided Catalano reimbursement, including the cost of surgery and temporary disability payments. On March 10, 1967, Catalano was discharged by his physician, Dr. Boling, without any permanent residual disability.
Nevertheless, Dr. Boling referred Cata-lano to Dr. Miller for examination and possible further treatment. In a letter from Dr. Miller to Dr. Boling dated June 2, 1967, and filed with the Commission, Dr. Miller concluded that Catalano probably had “the residuals of an arthrotomy with chondromalacia of the patella,” and that although no therapy was indicated as of the date of the letter, future treatment and/or surgery might be required. Although the record is not entirely clear on this point, it appears that this visit was paid for by the carrier.
On April 12, 1968, Catalano visited Dr. Boling for a checkup of his' knee complaining that he could not stoop down well on the knee without some grating and that a lot of walking bothered him. An X-ray was taken which was “not remarkable”. In his report of the visit to the carrier, Dr. Boling stated that Catalano was no worse than previously, and that he was to return only if he had trouble. This visit was paid for by the carrier.
No further treatment resulted from the April 12 visit. Catalano filed a claim for compensation with the Commission on October 10, 1969, more than two years after respondent’s voluntary payments had ceased, but less than two years after the April 12, 1968 visit.
Initially, it is necessary to correct an apparent misunderstanding on the part of the Full Commission regarding the nature of claimant’s check-up on April 12, 1968. In its order reversing the Judge of Industrial Claims the Full Commission stressed that Catalano’s visit was essentially a routine checkup of his neck, and that therefore the X-ray of the injured area was merely incidental to a visit for another complaint. This does not appear to have been the case. The Full Commission’s source of information in the record on this point was a deposition of Dr. Boling in the course of which he was asked to read from his letter of April 12, 1968, to respondent’s insurance carrier. In quoting from the letter, Dr. Boling stated: “Mr. Catalano came in just for routine check of his neck.’’ The letter in question is also in the record, and where Dr. Boling apparently read neck (another possibility is a typographical error by the court reporter) the letter reads knee. That Catalano visited Dr. Boling for a check-up of his knee is amply supported by the record. No reference to his neck appears elsewhere in the proceedings. Accordingly, we take it as established that Catalano visited Dr. Boling for a check-up of his knee.
Turning to the merits of Catalano’s contention that his claim was not barred by the statute of limitations, it appears from the record that at the time of his visit to Dr. Boling on April 12, 1968, approximately a year had passed since his last remedial treatment furnished by the employer. Had claimant been put on notice at that time that the employer-carrier did not accept liability, he could have filed a timely claim at any time before March 11, 1969. Far from putting claimant on notice that liability was contested, the employer-carrier *26 paid claimant’s medical bill for the April 12 visit, knowing (as the letters of Dr. Boling and Dr. Miller referred to above indicated) that claimant’s disability was continuing, and that he might require treatment at any time. In our view the carrier cannot thus lull a claimant into a false sense of security and then invoke the statute of limitations on the ground of claimant’s tardiness in filing his claim.
A case in point is Howanitz v. Biscayne Electric, Inc., 139 So.2d 678 (Fla.1962). In that case the carrier authorized by letter certain treatment of the claimant, and then, after claimant had failed to file a claim within the statutory period in reliance on the carrier’s acceptance of liability, the carrier attempted to invoke the statute of limitations as a bar to the claim. This Court held that the carrier was es-topped from proceeding in such a manner, saying :
“Respondent was given notice by Dr. Horwich of his further treatment of petitioner, and respondent’s above-quoted letter whs written within the two-year statute of limitation period. The tenor of the letter is such that it reasonably could be taken and was taken by petitioner’s doctor as an authorization for medical treatment. Had such not been the case, it is possible that the doctor would have advised petitioner to immediately file a claim to protect his rights. “An insurance carrier cannot avail itself of a letter of this type which could have the effect of leading a claimant to believe liability is accepted, only to later learn that the carrier is denying liability and time had expired for the filing of his claim. It is our view that under these circumstances the employer/insurance carrier is estopped to invoke the statute of limitation. This is particularly true when we consider that the Supreme Court has the duty to give liberal construction to the Workmen’s Compensation Act in favor of claimants.”
Although there was no letter authorizing medical treatment in the case sub judice, the fact that the carrier paid claimant’s medical bill for the April 12 visit, knowing that it was probable that claimant would require further treatment in the future, could reasonably have been construed by claimant and his doctor as an acceptance of liability by the employer-carrier, on which claimant was entitled to, and obviously did, rely. Under these circumstances, the employer-carrier is estopped to invoke the statute of limitations against claimant with regard to his claim filed with the Commission on October 10, 1969.
Upon applying the doctrine of estoppel it becomes unnecessary for us to consider whether Catalano’s April 12, 1968, visit constituted remedial treatment within the purview of Fla.Stat. § 440.19, F.S.A. In this regard, however, we note without passing directly on the issue, that there is a striking resemblance between the facts in the case sub judice and the conclusion reached in Food Fair Stores, Inc. v. Tokayer, 167 So.2d 563 (Fla.1964), wherein we held that the taking of an electro-cardi-ogram constituted remedial treatment within the meaning of Fla.Stat. § 440.13, F.S. A.
Accordingly, the order of the Full Commission is quashed with directions to reinstate that part of the order of the Judge of Industrial Claims finding that Catalano’s claim was not barred by the statute of limitations. The remainder of the cause is hereby remanded to the Full Commission for consideration of those points raised by the employer-carrier in its application for review which were rendered moot by the conclusion of the Full Commission that Ca-talano’s claim was barred by the statute of limitations.
It is so ordered.
ROBERTS, C. J., and ERVIN, CARLTON and DEKLE, JJ., concur.