STATE, *ex rel.* CARY D. LANDIS, Att'y Gen'l, *et al.*, v. TOWN OF LAKE PLACID.

158 So. 497.
Opinion Filed January 5, 1935.
Petition for Rehearing Denied January 21, 1935.

*Edwin Brobston,* for Co-Relators;

*E. D. Treadwell* and *Treadwell & Treadwell,* for Respondent.

ELLIS, J.—The Attorney General and others as co-relators caused to be filed in this Court an information in the matter of quo warranto against the Town of Lake Placid.

The writ was issued.

The respondent moved to quash the writ and demurred to the information. At the same time a motion was made to strike certain parts of the information. The grounds of the demurrer and the motion to strike are identical.

The attack is made upon the validity of Chapter 12990, Acts of Florida, 1927, under which the Legislature undertook to abolish the municipal government of the City of Lake Stearns and establish the municipality of Lake Placid. The petition describes the territorial boundaries of the proposed new municipality. The area of territory included in those boundaries was referred to by this Court in the case of State, *ex rel.* Davis, Attorney General, v. Town of Lake Placid, 109 Fla. 419. 147 South. Rep. 468.

· In the case of West, *et al.,* v. Town of Lake Placid, 97 Fla. 127, 120 South. Rep. 361, the Supreme Court, speaking through Mr. Justice STRUM, pointed out that in the proceedings there under review, which was a suit for the validation of certain bond issues under the provisions of Chapter 12990, *supra,* the *de facto* existence of the municipality could be attacked only by a direct proceeding such as quo warranto instituted by the State through its Attorney General or through such other persons as may be lawfully au-

thorized or entitled by reason of the nature of the rights involved to invoke the remedy  In that case it was said that until the existence of the municipality is so challenged and terminated by a judgment of ouster it may continue to exercise its powers and discharge its governmental functions and those acts must be respected by the public.  In other words, this Court held that the existence of the municipality could not be collaterally assailed in a proceeding of that nature.

It was held that while an absolutely void attempt to establish a municipality may be collaterally attacked, the municipality of Lake Placid had apparently in good faith taken the necessary steps to put its charter into operation, and the inhabitants of the town had acquiesced therein.  Thus the municipality had become at least a *de facto* government.

The State by its Attorney General has in this proceeding directly attacked the legality of the municipality.  The fact that other persons are named in the petition as corelators who reside in the town and own property therein adds nothing to the authority of the State to assail the legality of the local *de facto* government.  See State, *ex rel.* Attorney General, v. Rose, 97 Fla. 710, 122 South. Rep. 225.

The allegations of the petition, therefore, in which the names of such residents are given, and a description of their property, would seem to serve no useful purpose and certainly not to add authority to the State to assail the legality of the municipal organization even if the nature of their rights involved entitled them to invoke the remedy by quo warranto to challenge the legality of the creation of the municipality or the exercise of authority over their lands and property.  The State, by the Attorney General, having exercised its power to assail the legality of the municipal government, no other right was essential to be coupled with it.

In this case the attempted establishment of a municipal

government by the legislative Act, Chapter 12990, above mentioned is attacked as invalid because, as it is said, the legislative power was exercised to promote the pecuniary interests of certain land corporations owning about 80% of the territory embraced within the boundaries of the town by making extensive and expensive improvements of a so-called public character in the name of the town government and at the expense partly of certain residents and property owners who neither personally nor in their property rights are or will be in any degree benefited by such activities. That to such end the passage of the legislative Act was procured pursuant to a contract between such corporations. That this official restriction of the town government was designed to place the governmental control of the town in the hands of agents of the promoting corporations to the exclusion of persons who owned property within the area of the town's boundaries but who would in no wise benefit by the so-called government. By such a scheme the practical control of the town's management and proposed debt service would be placed within the power of the promoting corporations.

The information alleges that pursuant to such scheme a bonded indebtedness of $195,000.00 was created, of which $117,000.00 was applied to the building of a white way, parks and a golf course, $8,000.00 for fire equipment and $70,000.00 for waterworks. That special improvement bonds were issued in the amount of $47,000.00, one-third of which was assessed against the municipality although several blocks of parkways abutting such improvement existed against which no assessment was made.

That the area of territory within the municipal boundaries is nine and a half miles north and south and nine miles east and west. That there were only a few hundred inhabitants within the area, yet a budget for the year 1930

was made up amounting to $52,825.00 to be raised by general taxation. That the purpose for the inclusion of that enormous area within the boundaries of the town was merely to impose upon the outlying lands beyond the range to which the benefits from this so-called public improvement could possibly extend a tax to support the town government and pay off its indebtedness.

The allegations of the petition are sufficient to show that this enactment of Chapter 12990, *supra,* was procured by the agents and representatives of certain land corporations who sought in the exclusive pecuniary interest of such corporations the exercise of the legislative power to create a nominally legal municipal government under which taxes might be imposed upon lands and properties owned by other persons to defray expenses incurred for the improvement of the properties and the consequent enhancement of their values owned exclusively by such corporations, while the lands and properties of other persons, some of whom are named as co-relators, are in nowise benefited nor may their owners enjoy the conveniences and protection of such improvements.

The Attorney General contends that the exercise of the legislative power in the furtherance of such a scheme is invalid as being in violation of the Constitution. It is contended that Sections 1 and 2 of the Declaration of Rights, securing equal protection before the law to all citizens in their unalienable rights of enjoying and defending life and liberty and the acquiring, possessing and protecting property and pursuing happiness and securing government for the protection and security of the citizens are violated.

That such an Act is in violation of Sections 24 and 26 of Article III of the Constitution requiring the establishment of a uniform system of county and municipal government, and requiring laws regulating elections and prohibiting

under adequate penalties all undue influence from power, bribery, turmoil or other improper practice. That such a law violates the principle of uniform and equal ratio of taxation. That it violates Sections 5, 7 and 10 of Article IX of the Constitution restricting to municipalities the power of taxation for municipal purposes only, prohibiting the power of taxation for the benefit of any chartered company of the state or for paying interest on bonds issued by such companies and prohibiting the credit of the State from being pledged or loaned to any individual, company, corporation or association and prohibiting any city, borough or township or incorporated district from becoming a stockholder in any company, association or corporation, and from obtaining or appropriating money for or to loan its credit to any corporation, association, institution or individual.

In the case of State, *ex rel.* Davis, Attorney General, v. City of Largo, 110 Fla. 21, 149 South. Rep. 420, this Court announced the principle that while the Legislature has the power under the provisions of Section 8 of Article VIII of the Constitution to establish municipalities and extend their boundaries, that it should at all times keep in mind, in exercising such authority, that the objects and purposes of such establishment of municipalities or extension of their boundaries are to provide for an aggregation or community or people and not simply an indiscriminate location of territory without regard for the requirements of the inhabitants.

In that case this Court said, speaking through Circuit Judge KOONCE, "It may be that a portion of the land annexed might receive some benefit by being within the corporate limits and might be suitable for municipal purposes, but the legislative Act includes such a large portion which is not so suited or benefited and so unwarranted as to ren-

der the entire Act void as violative of Section 12 of the Declaration of Rights, Constitution of Florida.".

The topographical facts in that case, while somewhat different from those appearing in this case, are not so distinguishable in character as to create a divergent line within which this case could not fall.

The information in this case alleges that there are only a few hundred inhabitants within the area of lands and waters embraced within 85½ square miles of territory. That the property of many of the inhabitants is not reached by any improvement of the town nor are any improvements contemplated in or near any of their property.

In the Largo case a petition for a rehearing was denied, the court saying that "a plain question of the constitutionality of a legislative Act was squarely presented to the court for determination," that "the court cannot evade the duty it owes to every citizen to protect him against invasion of his constitutional rights."

In the case of State, *ex rel.* Attorney General, v. City of Avon Park, 111 Fla. 148, 149 South. Rep. 408, this court, speaking through Mr. Justice WHITFIELD, announced the principle that the "organic provisions relating to establishing municipalities, by necessary implication, contemplate the creation of municipalities embracing severally a community of people within a limited area that would be appropriate to the actual and potential needs and uses of a municipality, as had, throughout the history of the territory and the State, been done by special legislative Act or by voluntary incorporations under general laws on that subject."

Co-relators were joined with the Attorney General in that proceeding which was instituted in this Court. The Court said that the co-relators were not estopped by acquiescence or otherwise to join in maintaining the action to test the

legality of the incorporation of their described rural lands in the municipality.

The case presented by the information now before us, independently of the co-relators, is one in which the legislative Act is challenged upon the ground that the Legislature, in view of the facts of which it is presumed to have had knowledge, disregarded the principle that its powers may be exercised only to promote the actual and potential needs and uses of the people in a limited area that would be appropriate to them in such area with proper regard for their requirements and that a sparsely settled area not needed for municipal purposes is not within the purview of the legislative power to establish municipalities.

In the case of State, *ex rel.* Davis, Attorney General, *et al.,* v. Town of Lake Placid, 109 Fla. 419, 147 South. Rep. 468, this Court discussed the facts which were in more general terms referred to in this information in this case and pointed out that the purpose of the Act was seemingly to include within the boundaries of the newly established municipality a vast area of rural lands and lakes of large area. The contention is that such territory was and is wholly unsuited to the purpose of a municipality from the viewpoint of the actual and potential needs of the people within such area and owning lands therein and with proper regard for their requirements.

In addition to that the information alleges a state of facts which indicate that the legislative Act was procured by certain persons who merely desired to obtain the exercise of the legislative power to the end that their special interest should be enhanced at the expense largely of other persons who would in nowise be benefited by the incorporation of this territory within the municipal boundaries. We do not decide that such an accusation, if established, would invalidate a legislative Act taken within the limits of its powers.

The imputation of fraud will not lie against a Legislature to invalidate an Act of that body which is within its powers, but in this case the power to enact the legislation in the circumstances of which the Legislature had knowledge and was bound to notice is assailed, and we think the allegations are sufficient if established to invalidate the Act.

The Legislature has not only no authority to include large areas many hundreds of times larger than the vicinity occupied by the inhabitants of a village or community and include such lands, forests and fruit groves when the scattered population derive no advantage, benefit, aid or privilege from the local government of the town proper. Nor may the Legislature do such a thing on the theory that the coming of great numbers of people as visitors or residents may in such an event render it expedient. Nor may it under the guise of a municipal organization authorize the borrowing or appropriation of money to the particular benefit of certain associations or corporations to the practical exclusion of others from such benefit. The doctrine of "unlimited power" to establish municipalities is not qualified merely by the circumstances of noncontiguous territory, but there are other limitations existing in the constitutional right of citizens securing from confiscation their property without compensation. State v. City of Stuart, 97 Fla. 69, 120 South. Rep. 335, 64 A. L. R. 1307.

One ground of the demurrer and the motion to quash is that there is no necessity for the action because there is another action pending in the Circuit Court for Highlands County of the same character involving the validity of the Act incorporating the Town of Lake Placid .

The point should be presented by a plea in abatement setting up those elements of such a plea which would be effectual to abate the present action. Such a plea is very like one setting up a former judgment or decree, one being in

abatement and the other in bar. For obvious reasons the defense cannot be presented by a demurrer or motion to quash. See Glasser v. Hackett, 37 Fla. 358, 20 South. Rep. 532. Horter v. Commercial Bank & Trust Co., 99 Fla. 678, 126 South. Rep. 909.

The demurrer and motion to quash are overruled as is also the motion to strike certain parts of the information.

WHITFIELD, TERRELL and BUFORD, J. J., concur.

BROWN, J., concurs specially.

DAVIS, C. J., disqualified.

BROWN, J. (concurring specially).—I concur in the conclusion reached, and also in the opinion excepting only those references therein relating to the joining of co-relators as being unnecessary. It may be that this was unnecessary under the peculiar facts of this particular case, though I doubt it. In any event, I do not think we should depart from the principle in that regard as laid down in State v. City of Sarasota, 92 Fla. 563, 109 So. 473, and State v. City of Stuart, 97 Fla. 69, 120 So. 335.