STATE OF FLORIDA, *ex rel.* CARY D. LANDIS, Attorney General, IVEY E. FUTCH, MRS. BEULAH A. DODDS, Joined by husband, E. E. DODDS, MRS. J. A. NEWSOM, joined by her husband, J. A. NEWSOM, ALFRED T. EIDE, J. L. MOORE, GEORGE A. KELSEY, ALBERT POPPELL, GEORGE PENDARVIS, JOHN PAYNE, SR., D. McQUILKIN, CORA WATERS and H. L. WATERS, her husband, L. MYRTLE BALDUS and FRANCIS G. BALDUS, her husband, J. WESLEY WILLIAMS, P. T. RICHARDS, FRANK H. LEWIS, WILLIAM SENNE, ALBERT C. WHITMORE and M. HALLE WHITMORE, his wife, IRENE CARSWELL and her husband, W. D. CARSWELL, GUSTAV HOFFMAN, LEON L. HENDERSON, IVEY PROPERTIES, INC., a Florida corporation, HANS J. HANSON, and LEE WARD, W. KEISLING, DR. E. C. KEISLING, and MRS. B. E. KEISLING, v. TOWN OF LAKE PLACID, a municipal corporation.

164 So. 531.
En Banc.
Opinion Filed December 3, 1935.

*Edwin Brobston,* for Co-Relators;

*E. D. Treadwell* and *Treadwell & Treadwell,* for Respondent.

ELLIS, P. J.—This case is presented again upon a petition for rehearing and to set aside a judgment of ouster against the Town of Lake Placid ordered to be entered by this Court in March of this year, and by *nunc pro tunc* order entered lately, because the Clerk failed to enter the order in the minutes of the Court as directed in March.

Oral arguments were heard before the Court on June 18th of this year upon the petition for a rehearing, because, as it was alleged, no notice of the hearing of the motion for a judgment of ouster was served upon the respondent, thereby denying to its attorneys an opportunity to be heard, and because, as it was alleged, the answer filed by the respondent tendered a good defense.

The answer of the respondent was filed February 4, 1935. The motion for judgment of ouster was filed thirty days later, and granted March 15th. The petition for a rehearing was filed on the 25th of March. Oral argument followed, and the question is presented whether in the circumstances the judgment of ouster should be vacated.

A brief history of the litigation, involving the question presented by the information in the nature of quo warranto as submitted by Attorney General Landis and the co-relators whom he associated with him and the answer of the Town of Lake Placid, may serve to make clear the action of the Court in directing a judgment of ouster to be entered by the Clerk against the respondent without the formality of notifying respondent's counsel of the Court's intention to take up for consideration the motion for such a judgment notwithstanding the respondent's answer.

In April, 1935, this Court, considering on writ of error a judgment of the Circuit Court sustaining a demurrer to an information in the nature of quo warranto presented to the Circuit Court for Highlands County against the same respondent, the Town of Lake Placid, by the then Attorney General, Fred H. Davis, and dismissing the information, held that Chapter 12990, Special Acts 1927, by which the Legislature undertook to establish the municipality of Lake Placid and repeal the legislative Act of 1925, Chapter 11586, establishing the City of Lake Stearns, was an invalid attempt to exercise legislative power under Article VIII, Section 8, of the Constitution of 1885, providing for the power to "establish, and to abolish, municipalities," and in transgression of the limitations imposed by that section and article of the Constitution upon the Legislature.

It is unnecessary to quote here the language of the opinion, describing the vast boundaries of the proposed town

covering an area of approximately seventy-two square miles embracing approximately forty-seven thousand acres, a territory very greatly in excess of the necessities of the people of the locality and wholly unnecessary to their convenience.

The Court reversed the judgment of the Circuit Court. See State, *ex rel.* Davis, v. Town of Lake Placid, 109 Fla. 419, 147 South. Rep. 468. In so holding the Court in effect decided that Chapter 12990, *supra,* was void in its entirety.

On November 30, 1934, the Attorney General, Honorable Cary D. Landis, in behalf of the State, applied to the Supreme Court for an injunction against the Town of Lake Placid and a certain land corporation in aid of the Court's jurisdiction in quo warranto proceedings, which had been begun by Attorney General Landis in the name of the State against the Town of Lake Placid in June of the same year. In each proceeding the Attorney General associated with him certain persons who resided in and were property owners of a part of the territory lying within the territorial limits of the municipality as defined by Chapter 12990, *supra.*

The information in the nature of quo warranto attacked the validity of Chapter 12990, *supra,* as an ineffective attempt to abolish the municipality of Lake Stearns and to establish a municipality to be known as Lake Placid. The information contained substantially the same allegations as were contained in the information heretofore mentioned as filed in behalf of the State by Attorney General Fred H. Davis, a demurrer to which was held by this Court to have been ineffectual and should have been overruled, pointing out that the legislative Act was invalid in its entirety as being in excess of the legislative power to establish municipalities under Section 8 of Article VIII of the Constitution on the ground among others that the fixing of bound-

aries of municipalities sought to be established to include lands rural in character such as farms, citrus groves, forests and wild, unoccupied lands far removed from the actual boundaries of the village to be incorporated and wholly unsuited for any municipal purpose and far removed from any benefits resulting from the incorporation or activities of the municipality proper, is an invalid exercise of legislative power and void.

In each information there were other allegations equally effective to challenge the validity of the Act, as being an attempt in addition to the inclusion of territory of such enormous area wholly unnecessary to the purposes of the municipality. Such allegations charged in substance that the procurement of the charter was pursuant to a plan or conspiracy on the part of certain corporations to obtain the benefit of the municipality's power of taxation to improve the material value of their landed possessions and utilize the credit of the Town and its taxing power for their private gain.

Each information contained more than one ground why the Town should be ousted of its powers as a municipality because of the invalidity of its legislative charter.

There was an attack made upon the information by demurrer, motion to strike and to quast the writ—all made in July, 1934.

This Court, in an opinion prepared by the writer, State v. Town of Lake Placid, 117 Fla. 874, 158 South. Rep. 497, overruled the demurrer and the two motions. It was held that the attack upon the validity of Chapter 12990, *supra,* made by the Attorney General, was a direct attack by the State upon the local *de facto* government under the town's charter and that the association of persons with him as co-relators residing within the boundaries prescribed by the

Act and owning property therein added nothing to the authority of the State to assail the legality of the *de facto* government of the town.

The information was held sufficient in two aspects of the case presented: not only because the allegations presented a scheme unlawful in its nature on the part of certain corporations to secure the benefits of their real estate holdings which the uses of the municipality's power of taxation and credit would produce for them, but also because the Legislature disregarded the principle that its powers may be exercised only to promote the actual and potential needs of the people in a limited area that would be appropriate to them in such area with a proper regard for their requirements, and that a sparsely settled area not needed for municipal purposes is not within the purview of legislative power to establish municipalities. The Court cited the cases of State, *ex rel.* Atty. Gen., v. City of Avon Park, 108. Fla. 641, 149 South. Rep. 409; State, *ex rel.* Davis, Atty. Gen'l, v. City of Largo, 110 Fla. 21, 149 South. Rep. 420, and State, *ex rel.* Davis, v. Town of Lake Placid, *supra.*

The respondent then in February, 1935, interposed an answer to the information. The answer attacked one aspect only of the case as presented by the information, and that attack consisted of a denial that the passage of the Act, Chapter 12990, *supra,* resulted from an unlawful scheme on the part of certain persons and corporations to secure the benefits of their real estate holdings which the use of the municipality's power of taxation and credit would produce for them.

There were many averments of fact made in the answer which if true would disprove such allegation and would tend to show that the passage of the Act resulted from an implied agreement at least on the part of the people living.

in the center of the town that their properties lying outside of such center should be taxed for the proposed development of the vast territory included within the boundaries prescribed by the Act.

There were averments tending to show that the co-relators were estopped from attacking the validity of the Act because they had agreed impliedly at least to the establishment of such a municipality with its far flung boundaries including territory sparsely settled and far beyond benefits that could result from proposed municipal improvements in the vicinity of the community.

There was no attack, however, upon the principle that the incorporation of unsettled lands, or lands rural in character, or farms, citrus groves and forests far removed from the actual boundaries of the village to be incorporated and sparsely settled, is *per se* an invalid exercise of legislative power.

The conclusion sought to be drawn from the averments of the answer is a *non sequitur;* the assertion of a conclusion which has no connection with the premise.

The attempted establishment of the municipality by the enactment of Chapter 12990, *supra,* contained its own seeds of dissolution. It was *per se* an invalid exercise of legislative power and void. It was of no consequence that some of the co-relators, whose presence in the proceeding was wholly unnecessary, had impliedly agreed to the wide territorial boundaries, or that as citizens of the village had enjoyed and participated in the averred benefits which had flowed from the improvements made. The Act was a legislative Act; not the Act of people living within a village, hamlet or town, who, under the general law, Sections 2935, 2936, 2937, 2938, *et seq.,* C. G. L. 1927, desired to establish for themselves a municipal government. See Town of En-

terprise v. State, 29 Fla. 128, 10 South. Rep. 740; Leatherman v. Alta Cliff Co., 114 Fla. 305, 153 South. Rep. 845. See also State v. Town of Forest Park, 87 Fla. 477, 100 South. Rep. 735.

If such had been the case the averments in the answer may have presented a question of estoppel against the co-relators who complain of the inclusion of their lands within the territorial boundaries of the town.

In State v. City of Clearwater, 106 Fla. 761, 139 South. Rep. 377, the decision did not rest upon the plea of estoppel interposed by the City against the co-relators. On the contrary, it rested upon the doctrine that Chapter 10394, Acts 1925, which extended the municipal boundaries of the City of Clearwater, "does not appear to violate any constitutional provision, or to invade any organic right."

As the Act was valid in its inception no act of the co-relators or failure to act in protest against the enactment of the law could add one jot or tittle to its validity. If the Act was invalid *ab initio* no act of the co-relators or benefits flowing to them from it, or failure on their part to protest could render the legislative Act valid, because the legislative exercise of power being no action of the co-relators, but solely a legislative function, the situation in which the co-relators found themselves could not add to or take from the legislative power to make valid what the Legislature had done or to destroy its action.

The validity of legislative action in establishing a municipality must be tested by the principle so fully and clearly discussed by Mr. Justice BROWN in the case of State v. City of Stuart, 97 Fla. 69, 120 South. Rep. 335, 64 A. L. R. 1307. "We are dealing here with the direct action of the Legislature," said the learned Justice, who then proceeded to announce the doctrine which obtains in this State,

viz.: that in the matter of establishing municipalities and fixing their boundaries the legislative power is not plenary or unlimited. In that case it was definitely held that:

"Though co-relators are joined, the information in this case was filed in the name of the State, on the relation of the Attorney General. It was therefore emphatically the duty of the respondent to answer the allegations of the information fully and specifically, showing just exactly what the city had done or failed to do or planned to do with respect to furnishing municipal benefits to the described territory owned by the relators" (text 353, 354).

Where a municipality is established under the general law by the voluntary activities of the people within a hamlet, village or town, the territorial limits of the municipality may be contracted in the manner prescribed by Section 3048 C. G. L. 1927. Whether it may be done in that manner when the boundaries of the municipality have been established by the Legislature seems to be indicated by the language of the opinion in Town of Ormond v. Shaw, 50 Fla. 445, 39 South. Rep. 108. See also State, *ex rel*. Davis, v. City of Homestead, 100 Fla. 361, 130 South. Rep. 21.

In the latter case, this Court, speaking through Mr. Justice WHITFIELD, said:

"Where, as here, there is an entire absence of authority for the purported extension of the municipal boundaries that have been fixed by statute, and not a mere improper exercise of authority conferred, *questions of individual estoppel do not ordinarily arise*." (Italics supplied.)

On March 6, 1935, the Attorney General moved for a writ of ouster on the ground that the answer set up no justification for the exercise of jurisdiction by the respondent over the lands.

The motion was acted upon on March 15, 1935, and

granted. The Court regarded no argument necessary to support the motion; that the answer set up no defense. The respondent has been deprived of no right because it was not notified of the Court's purpose to consider the motion in due course. Nevertheless oral argument was heard by this Court on April 24, 1935, and briefs submitted on the part of the respondent in May following on the petition for rehearing on the order granting the writ of ouster.

After due consideration of the arguments made and the able briefs filed by the attorneys for the respondent, the Court is of the opinion that the order and judgment of ouster should stand and be affirmed.

WHITFIELD, C. J., and TERRELL, BROWN and BUFORD, J. J., concur.

DAVIS, J., disqualified.