261 So.2d 498 (1972)
CITY OF LONG BEACH RESORT, Florida, Etc., et al., Appellants,
v.
Bruce COLLINS et al., Appellees.
Milton C. BUCKLEY, Appellant,
v.
Bruce COLLINS et al., Appellees.
Nos. 40202, 40207.
Supreme Court of Florida.
March 29, 1972.
Rehearings Denied May 24, 1972.
*499 William L. Durden, of Kent, Durden & Kent, Jacksonville, for appellant Milton C. Buckley.
Charles S. Isler, Jr., and Larry G. Smith of Isler, Welch, Bryant, Smith, Higby & Brown, Panama City, for intervenors-appellants, City of Long Beach Resort and Long Beach Resort, Inc.
Benjamin W. Redding, and Les W. Burke, of Barron & Redding, Panama City, for appellees.
PER CURIAM.
This is a direct appeal from the 14th Judicial Circuit Court which inherently passed upon the constitutionality of a state statute by its order of dismissal for failure to state a cause of action; we accordingly have jurisdiction under Fla. Const. art. V, § 4, F.S.A. and Evans v. Carroll, 104 So.2d 375 (Fla. 1958); Harrell's Candy Kitchen, Inc. v. Sarasota-Manatee Airport Authority, 111 So.2d 439 (Fla. 1959); and Milliken v. State, 131 So.2d 889 (Fla. 1961).
The statute in question is House Bill No. 5288, which was passed by the Legislature in 1970. It provides for merging the several cities along the western Gulf resort area of Panama City, Florida. (Petitioner suggests that the real attempt is at "consolidation" rather than a "merger," citing Fla. Const. art. VIII, § 3 (1968).) Among the grounds recited for unconstitutionality of the act are that it constitutes:
(a) A denial of equal protection under the Federal and State Constitutions in not allowing residents within these municipalities to vote on the proposed merger or consolidation, whereas the residents of the surrounding unincorporated areas were permitted to vote on the issue (it passed by such vote of only the unincorporated area residents).
(b) A deprivation of property rights without due process under both constitutions.
(c) Denial of franchise or referendum to the residents in the city.
(d) An unconstitutional delegation of power to the new municipality sought to be created.
(e) It constitutes class legislation favoring the residents of unincorporated areas over those dwelling within the city limits.
Intervenor-petitioner City of Long Beach Resort, Florida, a municipality, urges additionally that:
(a) Intervenor City which holds a franchise for the sale and distribution of water within its city and also to existing Panama City Beach, has issued water revenue bonds which have an outstanding balance plus accrued interest; and that to abolish Intervenor City and said City of Panama City Beach would jeopardize said bonds and properties in that no provision is made by the new act for the protection of the bond holders.
(b) Intervenor would be deprived of its property without due process of law contrary to the U.S. and Florida Constitutions.
(c) That the act's provision for payment of debts from revenues collected ONLY within respective former municipalities would deny intervenor city-water supplier that portion of *500 its income from water distribution into Panama City Beach and thus lose income therefrom to pay said bonds.
Petitioners brought proceedings both in quo warranto and for declaratory decree as to said House Bill No. 5288. The entire complaints in both causes were dismissed by the trial judge.
During appellate proceedings there has been a tender as reflected by motions filed before this Court to pay the Long Beach Resort bonds in full with interest pursuant to a call of said bonds by the City of Panama City Beach, in accordance with their terms. The tender has been refused on the ground that "information regarding the source of funds used to make the tender of payment of bonds" has not been furnished and that appellees "refuse to allow a certified public accountant employed by appellant access to the books and records of the City of Panama City Beach pertaining to the Long Beach Resort Water System, thereby preventing evaluation that the tender of funds for payment of the bonds was made from `net revenues derived from the operation of the water system of the City of Long Beach Resort', as required by bond provisions."
Such a call of the bonds and tender, supported by affidavit before this court, render moot the above additional questions raised by intervenor. Accordingly, the motion to dismiss intervenor's appeal is granted and is remanded to the trial court for disposition as may be indicated solely on the two objections raised regarding, (1) the providing of information as to the source of funds for tender of payment, and (2) access to the records of the old City of Panama City Beach, so as to afford evaluation, if necessary, that the tender meets requirements of the bond issue.
We revert now to the basic question here regarding the constitutionality of House Bill No. 5288, particularly in regard to the denial of the vote to city residents while granting it to adjoining unincorporated area residents in voting on the consolidation of the several municipalities along the famous "Miracle Strip" and its adjoining areas West of the resort City of Panama City, Florida.
The Legislature, by various special acts, created the Town of Edgewater Gulf Beach (1953), the City of West Panama City Beach (1967), the City of Long Beach Resort (1953) and the City of Panama City Beach (1953), all located along the glittering white sand beaches west of Panama City, Florida. Then, in 1970, the Legislature passed a sequence of bills which would have the effect of consolidating the four municipalities, together with five adjoining unincorporated areas, into a single governmental entity.
The first five of these special acts[1] designated unincorporated areas contiguous to the several existing municipalities and granted the residents of each of these unincorporated areas the right of referendum to determine whether or not they would be joined with the consolidated, new City of Panama City Beach created by the final one of this series of Acts, House Bill 5288 (Ch. 70-874). None of the residents and citizens of the former municipalities was granted the right of referendum on the issue of consolidation ("merger"). (It is into the corporate entity of existing City of West Panama City Beach that all are to be "merged." That city is then to become a new City of Panama City Beach.)
This was the prerogative of the Legislature which has life and death powers over municipalities which are created, modified and can be abolished by the Legislature. Saunders v. City of Jacksonville, *501 157 Fla. 240, 25 So.2d 648 (Fla. 1946); State ex rel. Landis v. Town of Lake Placid, 117 Fla. 874, 158 So. 497 (1935); State v. Town of Boynton Beach, 116 Fla. 534, 156 So. 539 (1934); Smith v. Treadwell, 161 So.2d 49 (1st DCA Fla. 1964).
There is no doubt of the Legislature's power to annex territory to an existing municipality. MacGuyer v. City of Tampa, 89 Fla. 138, 103 So. 418 (1925).
Town of San Mateo City v. State, 117 Fla. 546, 158 So. 112 (1935), upheld a statute which submitted a referendum vote to freeholders only. The Legislature may make its acts effective upon the happening of a contingency, which includes the approval of the affected citizens or a class of the affected citizens. San Mateo, supra, and State ex rel. Cheyney v. Sammons, 62 Fla. 303, 57 So. 196 (1911).
No constitutional infirmity having been demonstrated, the trial court's orders dismissing the amended petitions, and the final judgments entered for appellees, are accordingly
Affirmed.
The cause is remanded as set forth earlier in this opinion, however, solely on Intervenor's challenge on the bonds, for disposition by the trial court on (1) the providing of information to Intervenor by appellees as to the source of funds for tender of payment and (2) access to records of the original City of Panama City Beach to afford evaluation that the tender of payment of the bonds meets bond issue requirements.
It is so ordered.
ROBERTS, C.J., ERVIN, CARLTON, ADKINS and BOYD, JJ., and SPECTOR, Circuit Judge, concur.
DEKLE, J., dissents with Opinion.
DEKLE, Justice (dissenting):
The Legislature does, of course, create, modify and abolish municipalities, under the authorities set forth in the majority opinion. There are limitations, however; such power is not plenary and is subject, like all laws, to constitutional limitations and restrictions which these statutes affecting municipalities cannot abridge. City of Phoenix, Arizona v. Kolodziejski, 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523 (1970); State v. City of Miami Beach, 245 So.2d 863 (Fla. 1971), now require a vote extended to a municipality to be offered to the general electorate instead of being limited to freeholders only. This of course overrules the holding to the contrary in Town of San Mateo City v. State, 117 Fla. 546, 158 So. 112 (1935).
It may be that the Legislature may continue to provide for modification and creation of cities in the same arbitrary manner now allowed by the authorities, but it is my view that IF the Legislature provides for referendum, then such referendum must meet constitutional standards in being extended to all affected citizens alike and not to an unreasonable classification and to deny that right of franchise to other affected citizens. This is what was done in this case where the vote was granted to those being brought into the cities and living in the unincorporated areas (a limited number) and denying any say-so to the majority of affected persons residing in the cities being merged by the legislative acts. This is a denial of equal protection of the laws and a denial of property without due process contrary to the applicable constitutional provisions.
It is interesting to note that the voters (where allowed to vote) all rejected the consolidation ("merger") except under the last (House Bill 5287), covering an unincorporated area completely surrounded by existing City of West Panama City Beach.
With regard to voting, the case of State ex rel. Carpenter v. Barber, 144 Fla. 159, 198 So. 49 (1940), held:
"... [that] generally, the courts, in construing statutes relating to elections, hold that the same should receive a liberal *502 construction in favor of the citizen whose right to vote they tend to restrict and in so doing to prevent disfranchisement of legal voters."
Accord, State ex rel. Whitley v. Rinehart, 140 Fla. 645, 192 So. 819 (1939).
The following quotations persuasively indicate my constitutional view concerning equal protection of the laws:
"Equal protection does not require identity of treatment. It only requires that the distinction have some relevance to the purpose for which the classification is made, and that the different treatments be not so disparate as to be wholly arbitrary." State v. Andersen, Fla., 208 So.2d 814, 820.
"Classification `must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily, and without any such basis... . [A]rbitrary selection can never be justified by calling it classification.'" McLaughlin v. Florida, 379 U.S. 184, 190, 85 S.Ct. 283, 287, 13 L.Ed.2d 222. (emphasis ours)
In the case of Jackson v. Consolidated Government of Jacksonville, 225 So.2d 497 (Fla. 1969) (involving Jacksonville and four other municipalities within the county), the exact opposite voting provisions as here were made so that ALL voters in the city and county were entitled to vote on the proposition of consolidation. This really is consolidation in the present case also. Here it does not come within Fla. Const. art. VIII, § 3 (consolidation), however, because that section deals only with an entire county.
Appellees argue that the sequence of legislative acts here constituted six separate legislative determinations for different and diverse purposes. However, the several House Bills 5283, 5284, 5285, 5286, 5287 and 5288 are an obvious "package", all passed and made effective together, for a single (perhaps meritorious) purpose of consolidating adjoining beach areas into a named single municipal corporation. It is true, as appellees point out, that the several bills do not have express provisions of interdependency. They do not need to; the consolidating effect and purpose is clear without such expression.
No voice is given to the majority of citizens involved, those dwelling within the affected municipalities, as to whether they wish to "accept" those persons residing outside their boundaries who may vote themselves in; neither are these "urbanites" allowed a choice to accept or to reject the terms set forth in the consolidating statute nor the "shotgun marriage" with other cities. It is a "one-way street." "I come in if I wish; you have no say in the matter." It would be as much of an imbalance and an equal lack of reasonable classification the other way around. We do not have different classes of citizens.
Nothing is more sacred nor essential to the success of a democracy than the right to vote; it is the basic premise of our republican (representative) form of government. Without the free expression of the people through their franchise, we recede from our basic precept of government. It must not be eroded away. As the people's right of the franchise is diminished, so is Abraham Lincoln's "Government Of, By and For the People" diluted.
Such holding is in accord with the U.S. Supreme Court concept of "one man, one vote" which is of recent origin in this nation. It was first enunciated in Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), which stated (377 U.S. at p. 567, 84 S.Ct. at p. 1384, 12 L.Ed.2d at pp. 530-31):
"To the extent that a citizen's right to vote is debased, he is that much less a citizen. The fact that an individual lives here or there is not a legitimate reason for overweighting or diluting the efficacy of his vote. The complexions of societies and civilizations change, often with amazing rapidity. A nation once primarily *503 rural in character becomes predominantly urban. Representation schemes once fair and equitable become archaic and outdated. But the basic principle of representative government remains, and must remain, unchanged  the weight of a citizen's vote cannot be made to depend on where he lives. Population is, of necessity, the starting point for consideration and the controlling criterion for judgment in legislative apportionment controversies. A citizen, a qualified voter, is no more nor no less so because he lives in the city or on the farm. This is the clear and strong command of our Constitution's Equal Protection Clause. This is an essential part of the concept of a government of laws and not men. This is at the heart of Lincoln's vision of `government of the people, by the people, [and] for the people.' The Equal Protection Clause demands no less than substantially equal state legislative representation for all citizens, of all places as well as of all races." (emphasis ours)
The harm of "diluting" the vote of city dwellers denounced in REYNOLDS is grossly magnified when it is entirely denied and no voice at all is allowed.
I do not believe that stare decisis is unduly extended by citing language of an 1856 case from our own Capital City of Tallahassee styled Cotten v. County Commissioners of Leon County, 6 Fla. 610 (1856), where it was also urged that it was unconstitutional to submit a legislative act to a referendum vote of the people. The early peers of this Court stood with the people when they held otherwise with the following observation:
"Accustomed to witness the ceaseless conflicts of opposing powers, whether our eyes be turned to our own Federal organization, or to the monarchical governments of Europe, we have learned to give expression to our political jealousy without duly considering the appropriateness of its application. Here under our State government we have no exacting [King] John  no jealous and determined Baron. The people's breath creates the sovereign." (emphasis ours)
Now recently in 1970 from the U.S. Supreme Court comes the case of City of Phoenix v. Kolodziejski, supra, demanding reasonable classification upon the following basic reasoning:
"First, it is unquestioned that all residents of Phoenix, property owners and nonproperty owners alike, have a substantial interest in the public facilities and the services available in the city and will be substantially affected by the ultimate outcome of the bond election at issue in this case. Presumptively, when all citizens are affected in important ways by a governmental decision subject to a referendum, the Constitution does not permit weighted voting or the exclusion of otherwise qualified citizens from the franchise." (emphasis ours)
And so it appears that despite the rather complete powers vested in the Legislature over municipalities and their changes, we now have a solid new position that requires the voice of the people to be heard on a matter under the circumstances in this case where the classification cannot be called reasonable or distinguishable with logic and a vote is totally denied to some. All citizens in the area, oblivious of invisible municipal lines which really converge, are as vitally affected by this legislation, no matter where they live in relation to those invisible lines. More than ever in today's world we live in close relation to our neighbors and whether we like it or not are directly affected by what happens around us. This is particularly true of a metropolitan area and of a developed resort area, such as we have under consideration here. It is that very fact which is the background for and gave rise to the legislation for consolidation which may well be an advisable one  but not before the people have said so.
*504 This guarantee of franchise, I feel, impinges upon our holdings historically vesting "all power" over municipalities in the Legislature, to the extent now to require at least a reasonable classification in providing who may vote. Particularly as to the franchise, I would hold that it is required to be submitted to ALL affected voters in these circumstances where there is no logical difference appearing in the positions of the citizens affected. To do otherwise is a denial of equal protection to those denied the vote.
Accordingly, I would declare the statute, House Bill No. 5288, to be unconstitutional under Fla. Const. art. I, §§ 1, 2 and 9, as a denial of equal rights and protection and of due process and would reverse the judgments.
NOTES
[1] House Bills 5283 through 5287, all to become law on June 17, 1970 (as was the contested House Bill 5288); also known as Chapters 70,869 through 70,874, Laws of Florida.