Donald A. Pickworth Collier County Attorney Naples
QUESTION:
Has the Board of County Commissioners of Collier County been granted by the Legislature the authority or discretion to determine the composition or the number of members of the Collier County Industrial Development Authority?
SUMMARY:
Under the provisions of ss. 159.44-159.53, F. S., the Legislature has created and determined the structure of, and defined the powers and duties of, county industrial development authorities as public bodies corporate and politic while it has legislatively delegated the responsibiliy of determining the need for such authorities within the counties and of activating the functioning of such authorities to the governing bodies of the counties. The structural organization of the authorities and the composition, terms, and cycles of office of their members, however, have been prescribed with particularity by statute, thereby precluding the board of county commissioners from altering such matters as the prescribed composition or number of the authority members.
Your question is answered in the negative.
According to your letter, the Board of County Commissioners of Collier County, pursuant to s. 159.45, F. S., recently adopted a resolution declaring a need for a county industrial development authority in the county in order for the authority to transact business and to exercise the powers granted such authorities under part III, Ch. 159, F. S. You state that the county commission, `[i]n order to have a more representative cross section of both economic and geographical interests within Collier County . . . appointed 7 members to the Industrial Development Authority,' although s. 159.45(3), F. S., provides for the appointment of five persons who are residents and electors of the county as members of the authority created for the county. Section 159.45(1), F. S., states in pertinent part:
 In each county, there is hereby created a local governmental body as a public body corporate and politic to be known as the `. . . County Industrial Development Authority,' hereafter referred to as `authority' or `authorities.' Each of the authorities is constituted as a public instrumentality for the purposes of industrial development, and the exercise by an authority of the powers conferred by ss. 159.44-159.53
shall be deemed and held to be the performance of an essential public purpose and function. . . . (Emphasis supplied.)
In the absence of a constitutional restriction or prohibition, the Legislature is empowered to create a public corporation for the purpose of carrying out a state function. 81A C.J.S. States s. 141, p. 583. Such public entities or instrumentalities are distinct and independent entities with an identity separate from that of the county or its governing board and are not in any way subordinate to the county commission. Cf. AGO 077-92, to the same effect as relates to county housing authorities. The industrial authorities have been created by the Legislature as public instrumentalities for the purpose of industrial development and the performance of essential public purposes and functions, s.159.45(1), F. S., and `for the purpose of financing and refinancing capital projects . . . [and] fostering the industrial and business development of a county,' s. 159.46, F. S. It is the individual governing boards of the several counties, however, to which have been delegated by the Legislature the discretion and authority to determine whether there exists a need for a development authority in their respective counties and a need for the development and financing of industry therein as a prerequisite to the operative effectiveness of the statute, and, if such a need is found to exist, to activate the functioning of such industrial development authorities within the confines of their respective counties. See s. 159.45(1), F. S., which provides in part:
 No authority shall transact and business or exercise any power hereunder until and unless the county commission by proper resolution shall declare that there is a need for an authority to function in such county. . . . (Emphasis supplied.)
It is well established that a statute may become effective or operative upon the happening of certain conditions or contigencies specified in the act or implied therefrom, such as those specified in s. 159.45, F. S. See City of Long Beach Resort v. Collins,261 So.2d 498 (Fla. 1972); Gaulden v. Kirk, 47 So.2d 567 (Fla. 1950); Town of San Mateo City v. State ex rel. Landis, 158 So. 112 (Fla. 1934). Thus under the provisions of ss. 159.44-159.53, F. S., it is the Legislature which has created and determined the structure of and defined the powers and duties of the county industrial development authorities as public bodies corporate and politic while it is the legislatively delegated responsibility of the several county commissions to determine the need for such authorities to function in their respective counties and to activate the need for such authorities to function in however, does not delegate any such discretionary authority to the governing bodies of the counties to determine the structural organization and powers of such authorities or the composition or number of the members thereof or their terms of office or the procedures governing the official actions of their governing bodies. These matters and others are prescribed with particularity by the statute enacted by the Legislature, as it may be amended from time to time, and the enabling legislation does not purport to delegate to the county commissions any authority whatever other than that to determine the need for and to activiate the authorities and to appoint and remove their members. The statute is, of course, presumptively valid and must be obeyed and given effect unless and until it is judicially determined invalid. See
Evans v. Hillsborough County, 186 So. 193, 196 (Fla. 1938); White v. Crandon, 156 So. 303, 305 (Fla. 1934); State ex rel. Gillespie v. Thursby, 139 So. 372, 375 (Fla. 1932); and State ex rel. Atlantic Coastline R. Co. v. State Board of Equalizers,94 So. 681, 682 (Fla. 1922).
Section 159.45(3), F. S., provides for the appointment to and removal from office, and the composition or number and terms and cycles of office of members of the authorities:
 The aforementioned resolution [adopted by the county commission declaring a need for an industrial development authority] shall designate five persons who are residents and electors of the county as members of the authority created for said county. Of the members first appointed, one shall serve for 1 year, one for 2 years, one for 3 years, and two for 4 years and in each case until his successor is appointed and qualified. Thereafter, the commission shall appoint for terms of 4 years each a member or members to succeed those whose terms expire. The commission shall fill any vacancy for an unexpired term. A member of the authority shall be eligible for reappointment. Any member of the authority may be removed by the commission for misfeasance, malfeasance or willful neglect of duty. Each member of the authority before entering upon his duties shall take and subscribe the oath or affirmation required by the state constitution. A record of each such oath shall be filed with the Department of State and with the clerk.
See also s. 159.45(6), F. S., which provides in part that three members of the authority constitute a quorum for the transaction of any official business by the authority.
I find no provision in part III, Ch. 159, F. S., which authorizes or empowers the boards of county commissioners to alter the statutorily prescribed composition of these authorities or to increase or decrease the number of their governing heads or to change the statutorily prescribed cycles of office for the members of an authority created by statute or to affect in any manner the prescribed quorum or voting requirements for official actions of any authority in any county. The authority of public officers to proceed in a particular way or only upon specific conditions implies a duty not to proceed in any other manner than that which is authorized by law. White v. Crandon, 156 So. 303, 305 (Fla. 1934); First National Bank of Key West v. Filer, 145 So. 204, 207
(Fla. 1933); Alsop v. Pierce, 19 So.2d 799 (Fla. 1944), in which the court stated:
 When the Legislature has prescribed the mode, that mode must be observed. When the controlling law directs how a thing shall be done that is, in effect, a prohibition against it being done in any other way. State ex rel. Murphy v. Barnes, 24 Fla. 29, 3 So. 433; State ex rel. Church v. Yeates, 74 Fla. 509, 77 So. 262; Weinberger v. Board of Public Instruction, 93 Fla. 470, 112 So. 253.
Cf. In re Advisory Opinion of Governor Civil Rights,306 So.2d 520, 523 (Fla. 1975), `when the Constitution prescribes the manner of doing an act, the manner prescribed is exclusive, and it is beyond the power of the Legislature to enact a statute that would defeat the purpose of the constitutional provision.' It is a well-recognized principle of statutory construction that the mention of one thing implies the exclusion of another — expressiounius est exclusio alterius. Thus when a statute enumerates the things upon which it is to operate, or forbids certain things, it is ordinarily to be construed as excluding from its operation all things not expressly mentioned. See Thayer v. State,335 So.2d 815, 817 (Fla. 1976); Dobbs v. Sea Isle Hotel, 56 So.2d 341, 342
(Fla. 1952); Ideal Farms Drainage District v. Certain Lands,19 So.2d 234 (Fla. 1944). Cf. State ex rel. Reno v. Barquet,358 So.2d 230 (3 D.C.A. Fla., 1978), cert. pending (Case No. 54,478, filed June 26, 1978), in which the court held that s. 501.207, F. S., clearly provides the methods by which the state may enforce the provisions of the `little F.T.C. Act,' and since the state's attempted enforcement of Ch. 501, F. S., was not a method provided for by statute nor grounded upon the law in Florida, the court affirmed the lower court's order dismissing the complaint.
Applying the foregoing authorities to the instant inquiry, s.159.45, F. S., provides with particularity for the structure, organization, and powers of these industrial development authorities and for the composition, number, and terms and cycles of office of the members thereof; it does not delegate to the counties any discretionary authority to alter these provisions. Thus, based upon the aforecited cases, it is beyond the power of the boards of county commissioners to proceed in a manner other than that prescribed by law. Accordingly, it is my opinion that the Board of County Commissioners of Collier County has not been delegated the power or discretion by the Legislature to alter the composition or number of members of the Collier County Industrial Development Authority. Since the Legislature has already made the determination that the governing body of the authority shall consist of five members, the county commissioners do not have the authority to increase the number of members to seven.
Prepared by: Joslyn Wilson, Assistant Attorney General