Mr. Richard J. Taylor City Attorney City of Sarasota Suite 21 46 North Washington Boulevard Sarasota, Florida 33577
Dear Mr. Taylor:
This is in response to your request for an Attorney General's Opinion on the following question:
 IS THE CITY OF SARASOTA AUTHORIZED TO AMEND ITS CHARTER PROVISIONS RELATING TO THE REMOVAL OF ITS APPOINTED CITY MANAGER BY ORDINANCE WITHOUT REFERENDUM APPROVAL?
The charter of the City of Sarasota is contained in Ch. 73-618, Laws of Florida, as amended by Ch. 77-648, Laws of Florida. Section 1(a), Art. XVII, supra, states that the act shall take effect immediately upon becoming law. The provisions of Ch. 73-618, Laws of Florida, were presented, as House Bill 1588, to the Governor on June 6, 1973. See, Journals of the House of Representatives, Regular Session 1973, p. 1284. The Legislature adjourned sine die on June 6, 1973 (see, Journals of the House of Representatives, supra), giving the Governor fifteen consecutive days from the date of presentation to act on the bill pursuant to s. 8(a), Art. III, State Const. Chapter 73-618, Laws of Florida, thus became law without the Governor's signature on June 22, 1973. However, Ch. 73-618, specifically provides that the provisions of the act, with the exception of Article XVII, setting forth referendum requirements and procedures, would not become operative until ratified by a majority of the qualified electors of the City of Sarasota. Section 1(a), Art. XVII, Ch. 73-618, Laws of Florida. See generally, s. 10, Art. III, State Const., requiring that notice of intention to seek enactment of a special law be published as provided by general law but that such notice is not necessary when the law is conditioned to become effective only upon approval by vote of the electors of the area affected. Pursuant to s. 1(b) of the special act, the referendum for approval of Ch. 73-618, was to be held on the first Tuesday in September, 1973. Section (1)(d) states that upon approval of the act the provisions thereof were to become effective and operative at 12:01 a.m. on the sixtieth day following the date of the referendum. Your letter states that the required referendum was held September 4, 1973, and the charter was ratified by the electorate. Thereafter, the provisions of the charter became operative and effective on November 3, 1973.
In the absence of constitutional or statutory provisions to the contrary, statutes may become effective on the happening of certain conditions or contingencies specified in the act, as where the effectiveness of a statute which is complete in itself is made dependent on the result of an election provided for in the act. On the passage of a valid statute, which by its terms is to go into effect on the happening of a contingency or compliance with certain conditions, its language must be strictly followed and it will take effect only from the happening of the contingency or the performance of the conditions. See generally, 82 C.J.S. Statutes s. 410 (1953). The Florida Supreme Court has held that the Legislature may enact a statute complete in itself and provide that it shall go into effect upon the happening of a contingency, such as the affirmative vote at an election provided for in the act. See, Gillete v. City of Tampa, 57 So.2d 27, 30 (Fla. 1952); Voorhees v. City of Miami, 199 So. 313 (Fla. 1940). As the Court said in Brown v. City of Tampa, 6 So.2d 287, 289 (Fla. 1942), "It is permissible to make the effective date of a statute or ordinance contingent upon a ratification by a majority vote of the qualified electors of a municipality at an election therein provided for." See also, City of Long Beach Resort v. Collins,261 So.2d 498 (Fla. 1972); Voorhees v. City of Miami, supra; City of Winter Haven v. State ex rel. Landis, 170 So. 100 (Fla. 1936); Town of San Mateo City v. State ex rel. Landis, 158 So. 112 (Fla. 1934). A statute has not ex proprio vigore any force until it becomes the law of the land and that is when, by its terms, it takes effect and is to be understood as speaking from the time it goes into operation and not from the time of its passage. Neisel v. Moran,85 So. 346, 358-359 (Fla. 1920). Thus, while Ch. 73-618, Laws of Florida, was passed and became law on June 22, 1973, the charter of the City of Sarasota became effective, as provided therein, on November 3, 1973, sixty days following approval of the provisions of the charter itself by a referendum.
Pursuant to the provisions of the charter, the City of Sarasota has a commission-manager form of government in which all the powers of the city are vested in the city commission except those vested in the city manager, city auditor and clerk, finance director, and city attorney. See, s. 1, Art. IV, Sarasota City Code. As provided by the charter, the city manager is the chief administrative officer of the city and is responsible to the city commission for the proper administration of all affairs of the city, including but not limited to those placed by charter under his or her authority. Section 5, Art. VI, Sarasota City Code. As chief administrative officer of the city, the city manager is authorized, among other things, to: (a) supervise all governmental and proprietary functions of the city and all departments and divisions except the records, finance and legal departments and as otherwise specifically provided in the charter; (b) fix compensation and salaries for all city employees, with certain specified exceptions, subject to charter provisions, ordinances and personnel rules and regulations; (c) appoint the head of the division of public safety and the chiefs of the police and fire forces, subject to the advice and consent of the city commission; (d) promulgate rules and regulations for the appointment, promotion, discipline and removal of employees of the city (except city commission appointees); however, such rules and regulations must be effectuated by adoption of an ordinance to that effect by the city commission; (e) enforce or supervise the enforcement of ordinances, franchises and contracts of the city; and (f) attend city commission meetings with a voice but not a vote in the proceedings. Section s. 5(a)-(f), Art. VI, Sarasota City Code. Thus, the city manager is a city officer or official rather than an employee of the municipality. See, State v. Glidewell,311 So.2d 126 (2 D.C.A. Fla., 1975), wherein the court held that a city manager, who was the chief administrative officer of a municipality and had extensive powers and responsibilities to perform his duties was a "municipal official"; AGO's 86-11, 80-97. Cf., State ex rel. Holloway v. Sheats, 83 So. 508, 509 (Fla. 1919) (term "office" implies delegation of portion of sovereign power to, and possession of it by person filling the office, while "employment" does not comprehend delegation of any part of sovereign authority).
Pursuant to s. 1, Art. VI, Sarasota City Code, the city manager is appointed by the city commission, serves at the pleasure of the commission and at such compensation as is determined by that body to be appropriate. Provisions for removal of the city manager are contained in s. 2, Art. VI, Sarasota City Code, which state that the city manager may be removed from office for good cause by a majority vote of the entire city commission. This section also makes provision for a demand from the city manager of the charges against him or her upon which the proposed removal from office is based; for a public hearing; for suspension of the city manager pending resolution of the questions of removal; and for removal without cause under certain, specified conditions. Section 2(a)-(c), Art. VI, Sarasota City Code.
Section 166.021(4), F.S., provides that:
 The provisions of this section shall be so construed as to secure for municipalities the broad exercise of home rule powers granted by the constitution. It is the further intent of the Legislature to extend to municipalities the exercise of powers for municipal governmental, corporate, or proprietary purposes not expressly prohibited by the constitution, general or special law, or county charter and to remove any limitations, judicially imposed or otherwise, on the exercise of home rule powers other than those so expressly prohibited. However, nothing in this act shall be construed to permit any changes in a special law or municipal charter which affect the exercise of extraterritorial powers or which affect an area which includes lands within and without a municipality or any changes in a special law or municipal charter which affect the creation or existence of a municipality, the terms of elected officers and the manner of their election, the distribution of powers among elected officers, matters prescribed by the charter relating to appointive boards, any change in the form of government, or any rights of municipal employees, without approval by referendum of the electors as provided in s. 166.031. Any other limitation of power upon any municipality contained in any municipal charter enacted or adopted prior to July 1, 1973, is hereby nullified and repealed.
The provisions of the Sarasota City Charter, supra, relating to the removal of its appointed city manager do not "affect . . . the terms of elected officers and the manner of their election, the distribution of powers among elected officers, matters prescribed by the charter relating to appointive boards . . ." as provided in s. 166.021(4), F.S. (e.s.) Accordingly, the prohibition in s.166.021(4) against any changes in a special law or municipal charter affecting the matters set out above in the absence of a referendum would not apply to the instant situation. Cf., AGO 83-39 (appointment of alternate members with voting power to an appointive municipal civil service board created by special law enacted prior to July 1, 1973, is a matter that can only be accomplished by the governing board of the municipality by a charter amendment with the approval by referendum of the electors of the municipality as prescribed by s. 166.031, F.S.); AGO 75-158 (the legislative and governing body of a municipality may make no change in a municipal charter provision which affects the method established therein for filling vacancies in elective municipal office without referendum approval as provided in s. 166.031. F.S.).
Further, it would appear that the charter of the City of Sarasota was not adopted prior to July 1, 1973, so that, for purposes of the second sentence of s. 166.021(4), F.S., elements of the charter limiting the power of the municipality were not nullified and/or repealed. See, AGO's 75-176 and 74-371. The words "enacted" or "adopted" are not defined for purposes of the s. 166.021(4), F.S., and, under such circumstances, should be construed in plain and ordinary terms. See, e.g., State v. Egan, 287 So.2d 1, 4
(Fla. 1973); Pedersen v. Green, 105 So.2d 1, 4 (Fla. 1958); Gasson v. Gay, 49 So.2d 525, 526 (Fla. 1950); State ex rel. Hanbury v. Tunnicliffe, 124 So. 279, 281 (Fla. 1929). The term "adopt" has been defined as "[t]o accept, consent to, and put into effective operation; as in the case of a constitution, constitutional amendment, ordinance, or by-law. . . ." (e.s.) Black's Law Dictionary 70 (Rev. 4th ed. 1968). "[E]nact" has been determined to mean "to establish by legal and authoritative act: make into a law; esp: to perform the last act of legislation upon (a bill) that gives the validity of law. . . ." (e.s.) Webster's Third New International Dictionary 745 (unabridged ed. 1981). Therefore, the instant municipal charter was not "enacted or adopted" until it was put into effective operation or until the last act of legislation was performed which gave the charter the validity of law, i.e., until November 3, 1973.
Subsection (5) of s. 166.021, F.S., however, states that:
 All existing special acts pertaining exclusively to the power or jurisdiction of a particular municipality except as otherwise provided in subsection (4) shall become an ordinance of that municipality on the effective date of this act, subject to modification or repeal as other ordinances.
And see, s. 7, Ch. 73-129, Laws of Florida, stating that the effective date of the Municipal Home Rule Powers Act was October 1, 1973. As discussed above, the provisions of Ch. 73-618, Laws of Florida, containing the charter provisions of the City of Sarasota, became law on June 22, 1973. Thus, while the charter was not effective until sixty days after its adoption by referendum, the special act had been adopted and would fall within the parameters of s. 166.021(5), F.S., converting provisions of the special act (except as provided in s. 166.021[4] into ordinances on October 1, 1973. Thus, the provisions of Ch. 73-618, Laws of Florida, relating to the removal of Sarasota's appointed city manager have been converted into ordinances by s. 166.021(5), F.S., and are subject to amendment or repeal in the same manner as are other ordinances. See, AGO 79-21 (city council may amend by ordinance former charter provisions, converted to ordinances by operation of s. 166.021[4] and [5], F.S., relating to tenure and removal or suspension of appointed municipal officers); AGO 73-475 (concerning city's authority to repeal or amend by ordinance a charter provision for suspension or removal of appointed city officers); AGO 73-276 (discussing city's authority to establish or alter compensation and expense allowances of elected and appointed city officials preceeding and following effective date of Municipal Home Rule Powers Act).
Therefore, I am of the opinion, until legislatively or judicially determined otherwise, that under the Municipal Home Rule Powers Act of 1973 the City of Sarasota may amend by ordinance and without referendum approval its former charter provisions relating to removal of an appointed city manager which were converted to ordinances by operation of s. 166.021(5), F.S.
Sincerely,
Jim Smith Attorney General
Prepared by:
Gerry Hammond Assistant Attorney General